**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **AMIR ABDUL AL-HAKIM,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 3:06-cv-01049-MEF-CSC** |
| | ) |
| **LEE COUNTY JUSTICE CENTER, et al.** | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANTS' SPECIAL REPORT

COME NOW Sheriff Jay Jones, Major Cary Torbert, Jr., Lieutenant Ray Roberson, Nurse Linda Stewart, Dr. John McFarland, Officer Gwen Crawl[1], and Sgt. Tommy Threat Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

Amir Abdul Al-Hakim, also known as Wayne Harris, was booked into the Lee County Jail on November 3, 2006 on charges of failure to appear in a case of receipt of a controlled substance, failure to pay child support, fraud and possession of a stolen credit card. (Exhibit A, Inmate File of Amir Abdul Al-Hakim, also known as Wayne Harris.) The Plaintiff was a pretrial detainee at all times relevant to the allegations made the basis of the Plaintiff's Complaint. (Exhibit B, Affidavit of Major Cary Torbert, Jr.[2], "Torbert Aff." ¶ 5.)

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that Defendants violated his constitutional rights by not providing him meals in keeping with his religion, by refusing to let him practice his religion, by not providing

---

[1] Incorrectly designated in the Plaintiff's Complaint as Officer "Gloria Crowell."
[2] Cary Torbert, Jr. serves as Chief Deputy of Corrections of the Lee County Detention Facility and has obtained the rank of Major. He has worked with the Lee County Sheriff's Office for over 32 years. (Torbert Aff. ¶ 2.)

him any meals and by failing to allow him one hour per day "out" while in lockdown.  Plaintiff

requests damages of $150,000,000.00.  (Plaintiff's Compl. p. 4.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and

completely without basis in law or fact.  Defendants deny that they acted, or caused anyone to

act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.  (Exhibit C,

Affidavit of Sheriff Jay Jones[3], "Jones Aff.," ¶ 4; Ex. B, Torbert Aff. ¶ 4; Exhibit D, Affidavit of

Lieutenant Ray Roberson[4], "Roberson Aff.," ¶ 4; Exhibit E, Affidavit of Gwendolyn Crawl[5] ¶ 3;

Exhibit F, Affidavit of Tommy Threat[6] ¶ 4; Exhibit G, Affidavit of Linda Stewart[7] ¶ 4; Exhibit

H, Affidavit of  John McFarland[8], M.D., "McFarland Aff.," ¶ 8.)  Defendants raise the defenses

of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the

Prison Act, and additional defenses presented below.  Defendants reserve the right to add

additional defenses if any further pleading is required or allowed by the Court.

---

[3]  Jay Jones is the duly elected Sheriff of Lee County, Alabama, and has served in such capacity since 1999.  (Jones Aff. ¶ 2.)

[4]  Ray Roberson is employed with the Lee County Sheriff's Office and serves as Assistant Jail Administrator at the Lee County Detention Facility.  He has worked in the Lee County Detention Facility for twenty-three years and has obtained the rank of lieutenant.  (Roberson Aff. ¶ 2.)

[5]  Officer Crawl has been employed with the Lee County Detention Facility for over fifteen-years as a Correctional Officer.  For the past five years she has served as the corrections officer in charge of the kitchen. Her duties include overseeing the kitchen trustee workers, the preparation of menus, overseeing the preparation of meals and serving of meals to the inmates, and making out supply orders.  (Crawl Aff. ¶ 1.)

[6]  Sgt. Threat is employed by the Lee County Sheriff's Office and assigned to serve at the Lee County Detention Center.  He has been employed at the Lee County Detention Center for six (6) years and is a graduate of the Alabama Jail Management School. (Threat Aff. ¶ 2.)

[7]  Nurse Stewart has been employed as a nurse with the Lee County Detention Facility for over five years.  She is an L.P.N. and has been licensed for over twenty-years, having served as a nurse in the ICU and CCU in Cobb Hospital Emergency Room for fifteen-years.  She taught Nursing Assistance Clinicals for two years at Career Institute.  She collected medical information for the law firm of Bellamy and Jones for three years, and was employed as the personal nurse for Doctor Hoffman, in Phenix City, Alabama, for twelve-years, prior to coming to the Lee County Detention Facility.  (Stewart Aff. ¶ 1.)

[8]  Dr. McFarland is a licensed physician serving as an emergency room doctor with East Alabama Medical Center. Since 1994, he has served as the treating physician for inmates at the Lee County Detention Facility.  (McFarland Aff. ¶ 2.)

## I.     FACTS

Sheriff Jay Jones has delegated the responsibility for the day-to-day functions of the Lee County Detention Facility to Major Cary Torbert, Jr., the Chief Deputy of Corrections of the Lee County Detention Facility.  As Sheriff of Lee County, Sheriff Jones is responsible for promulgating the policies governing the Lee County Detention Facility.  (Jones Aff. ¶ 5.)  Sheriff Jones has no personal knowledge of any of the specific allegations that form the basis of Plaintiff's Complaint.  (Jones Aff. ¶ 3.)

### A.     DENIAL OF RELIGION.

It is the policy of the Lee County Sheriff's Office that persons incarcerated in the Lee County Detention Center are allowed the opportunity to worship in the recognized religion of their choice, receive religious counseling, and attend in-house religious programs.  (Jones Aff. ¶ 6; Torbert Aff. ¶ 6; Roberson Aff. ¶ 6; Threat Aff. ¶ 5.)  Religious professionals and religious volunteers who wish to provide scheduled religious programs must be cleared by the chief deputy sheriff before being admitted to the Detention Center.  (Jones Aff. ¶ 7; Torbert Aff. ¶ 7; Roberson Aff. ¶ 7; Threat Aff. ¶ 6.)  All religious visitors are subject to search and must comply with all visitor regulations.  (Jones Aff. ¶ 8; Torbert Aff. ¶ 8; Roberson Aff. ¶ 8; Threat Aff. ¶ 7.)  Religious volunteers who are approved may go into the dayroom and provide ministry in general population areas to those inmates who wish to participate.  (Jones Aff. ¶ 9; Torbert Aff. ¶ 9; Roberson Aff. ¶ 9; Threat Aff. ¶ 8.)  Religious volunteers may also make use of the multi-purpose area in order to hold religious services.  (Jones Aff. ¶ 10; Ex. B, Torbert Aff. ¶ 10; Ex. D, Roberson Aff. ¶ 10; Threat Aff. ¶ 9.)  Inmates in administrative segregation may receive ministry individually only.  (Jones Aff. ¶ 11; Torbert Aff. ¶ 11; Roberson Aff. ¶ 11; Threat Aff. ¶ 10.)

Religious services may be scheduled for a set time each week.  Other services may be

scheduled for other times with the chief deputy sheriff's approval. Normally, there are religious services held on Wednesdays and Sundays. Inmates have the opportunity to request an individual religious visit for any Wednesday by filling out a request form and turning it in to any officer. (Jones Aff. ¶ 12; Torbert Aff. ¶ 12; Roberson Aff. ¶ 12; Threat Aff. ¶ 11.)

No inmate who, in the opinion of the sheriff, chief deputy sheriff, or shift supervisor, presents a security risk may attend religious services. Such inmates will be allowed free access to religious counseling or conferences on an individual basis. (Jones Aff. ¶ 14; Torbert Aff. ¶ 15; Roberson Aff. ¶ 14; Threat Aff. ¶ 13.) No member of the Detention Center staff may discriminate against any inmate on the basis on that inmate's choice of religion. (Jones Aff. ¶ 15; Torbert Aff. ¶ 16; Roberson Aff. ¶ 15; Threat Aff. ¶ 14.) Any member of the jail staff who engaged in such discrimination would be in violation of Sheriff Jones' policies. (Jones Aff. ¶ 15.) The Lee County Sheriff's Office does not provide any religious materials of any nature to inmates at the Sheriff's Office's expense. (Jones Aff. ¶ 16; Torbert Aff. ¶ 16; Roberson Aff. ¶ 16; Threat Aff. ¶ 15.)

Plaintiff never asked Sheriff Jones, Major Torbert, Sgt. Threat or Lt. Roberson for an individual religious visit. If any request was made by the Plaintiff for an individual religious visit, that request would have been answered, and a copy of the answered request would have been placed in the Plaintiff's inmate file. However, upon review of the Plaintiff's inmate file, no such form is present. (Jones Aff. ¶ 13; Torbert Aff. ¶ 13; Roberson Aff. ¶ 13; Threat Aff. ¶ 12; Ex. A, Plaintiff's Inmate File.)

### B.    CLAIMS REGARDING MEALS.

Menus for the inmates at the Lee County Detention Facility are written out each month based on an original pre-approved menu. The original pre-approved menu has been approved by

a certified dietician at the Auburn University Extension Office. The dietitian has made any necessary revisions to the menu, which Major Torbert then adopts, and approves the menu as meeting all nutritional requirements. This dietitian-approved menu is the basis for all meals that have been served to inmates in the Lee County Detention Facility over the past two years. (Jones Aff. ¶ 17; Torbert Aff. ¶ 17.)

Inmates receive ample amounts of dairy products, proteins and vegetables. Water is served to the inmates daily; also, inmates receive non-fat milk and fruit drinks several times a week. Further, healthy portions are served at each meal. Inmates are usually served meat daily. Inmates usually are served three to four different food items at every meal, offering a variety of food choices each day. Inmates are served fruit several times a week. (Jones Aff. ¶ 18; Torbert Aff. ¶ 18.)

Menus detailing what will be served for breakfast, lunch and supper each day at the Lee County Detention Facility are written out each month by Officer Crawl based on this original pre-approved menu. (Exhibit I, Lee County Detention center menus for November 2006 through February 2007.) Although Officer Crawl is not a certified dietitian, she ensures that the menus contain ample amounts of dairy products, proteins and vegetables. (Crawl Aff. ¶ 5.)

During Plaintiff's incarceration, he has been served a meal three times a day each and every day he has been incarcerated. Because Plaintiff refused to eat, he was placed in the E-1 medical cell for observation. (Crawl Aff. ¶ 6. Torbert Aff. ¶ 19; Roberson Aff. ¶ 19; Threat Aff. ¶ 17.) A camera in cell E-1 allows the officer in central control to monitor that cell 24 hours a day. Through this camera, Plaintiff was observed by multiple officers eating potato chips, when he supposedly was not eating. On November 17, 2006, Plaintiff was observed by several officers

and Nurse Kelley Griffith[9] through the observation camera eating from an open bag of corn chips in his medical observation cell. He was also observed hiding food between his bunk and the toilet. (Exhibit J, Affidavit of Kelley Hendricks Griffith, "Griffith Aff.," ¶ 7; Ex. A, Inmate File, Inmate Disciplinary Report dated November 17, 2006.) After several days in the medical cell, Plaintiff began accepting his trays and then asked that he be put back into the general population. (Torbert Aff. ¶ 19; Roberson Aff. ¶ 19; Threat Aff. ¶ 17.)

Because Plaintiff refused his trays, officers began keeping a log of when trays were offered to Plaintiff and whether he refused or accepted them. (Torbert Aff. ¶ 20; Roberson Aff. ¶ 20; Threat Aff. ¶ 18.)

During the time period when Plaintiff was refusing his trays, he was offered Ensure drink but he refused. Plaintiff was offered peanut butter and jelly on wheat bread, which he also refused. (Torbert Aff. ¶ 22; Roberson Aff. ¶ 22; Stewart Griffith Aff. ¶ 20.)

During the time period when Plaintiff was refusing his trays, Plaintiff's grandmother came to visit him regarding his refusal to eat. Plaintiff's grandmother also called the jail and set up a meeting between Plaintiff's Baptist preacher, Rev. Bandy, and Plaintiff so that Rev. Bandy could counsel him and encourage him to eat. (Torbert Aff. ¶ 23; Roberson Aff. ¶ 23.)

Plaintiff has been residing in the general population of the jail and eating normally for over two months. (Torbert Aff. ¶ 27; Roberson Aff. ¶ 27; Threat Aff. ¶ 23; Crawl Aff. ¶ 7.)

---

[9] Kelley Griffith is a Licensed Practical Nurse (LPN). She has been employed by the Lee County Sheriff's Office and assigned to the Lee County Detention Facility since February 2006. Prior to her employment at the Sheriff's Office, she was employed as an LPN at Mt. Meigs DL/S Juvenile Detention Facility for six months. She earned her LPN degree from Southern Union in August 1998. Since earning this degree, in addition to her experience in jail/prison settings, she has been employed by Lanier Health Services Hospital where she was assigned to the Medical/Surgical Floor. She also served as an LPN in the Army Outpatient Medical Clinic for two years. She worked for three years at the Lake Martin Community Hospital in the emergency room, medical/surgical floor, and outpatient floor. She has also been employed to manage the office of Robert Bartel, MD, and has worked at the Tallassee Community Hospital. (Griffith Aff. ¶ 1.)

Plaintiff has inconsistently stated what he will and will not eat due to his religious beliefs. Because Plaintiff indicated on his booking sheets that he did not eat pork or white bread due to his religious beliefs, Officer Crawl did not send these items on his tray. After Plaintiff stated that he would eat rice, wheat bread and water, Crawl sent him these items at meal time. After Plaintiff stated that he would eat peanut butter, Crawl sent him a peanut butter sandwich. Officer Crawl has tried her best to accommodate Plaintiff's dietary requests. (Crawl Aff. ¶ 8.)

As a Detention Facility medical staff, Dr. McFarland, Nurse Griffith and Nurse Stewart have neither duty nor authority with regard to any non-medical issues, such as food service, exercise time or religious activities that occur at the Detention Center. Their sole duty and authority is with regard to medical care of inmates. (McFarland Aff. ¶ 7; Griffith Aff. ¶ 4; Stewart Aff. ¶ 5.)

It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Facility are entitled to a level of health care comparable to that available to citizens in the surrounding community which will ensure their physical and emotional well-being. (Stewart Aff. ¶ 6.)

Medical care rendered to inmates in the Lee County Detention Facility is delivered under the direction of a licensed health care provider. (Stewart Aff. ¶ 7.)

No health care personnel or Detention Facility officer or other employee of the Sheriff's Office will ever summarily or arbitrarily deny an inmate's reasonable request for medical services. (Stewart Aff. ¶ 8.)

Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively. (Stewart Aff. ¶ 9.)

Inmates are guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.  (Stewart Aff. ¶ 10.)

It is the policy of the Lee County Sheriff's Office to allow inmates incarcerated in the Lee County Detention Facility to request health care services at any time.  (Stewart Aff. ¶ 11.)

Two methods may be utilized by inmates incarcerated in the Lee County Detention Facility in order to secure health care services:

    a.    <u>Verbal Request</u>:  An inmate may make a verbal request for emergency medical attention to any member of the Detention Center staff at any time.

    b.    <u>Written Request</u>:  An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Detention Center staff.

(Stewart Aff. ¶ 12.)

Requests for medical treatment will be accepted by members of the Detention Facility staff at any time.  (Stewart Aff. ¶ 13.)

When a request for medical treatment is made to a member of the Detention Facility staff, the staff member receiving the request will notify the shift supervisor of the inmate's request.  It is the shift supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner.  Any doubt as to whether an actual need exists for medical treatment will be resolved in favor of the inmate and medical treatment will be offered.  (Stewart Aff. ¶ 14.)

Medical requests of an emergency nature are to be handled immediately.  (Stewart Aff. ¶ 15.)

As a Lee County Sheriff's Office policy, during the booking process, inmates are informed of the methods by which they may obtain medical treatment.  (Stewart Aff. ¶ 16.)

The Detention Facility nurses, under the direction of the Detention Facility Administrator, are charged with the responsibility of obtaining appointments for inmates with physicians in order

that they may receive medical treatment or for scheduling times when the treating physician may attend to health care needs at the Detention Facility. (Stewart Aff. ¶ 17.)

All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a Detention Facility official. Should the physician request, a Detention Facility officer will be present for any and all examinations the treating physician deems appropriate. (Stewart Aff. ¶ 18.)

Sick call is conducted on a scheduled basis by a licensed practical nurse and is available to all inmates. All inmates are required to pay a $10.00 fee for non-emergency treatment and a $3.00 fee for prescription medication. Inmates will not be denied medical treatment because of lack of funds or for any other reason. When an inmate has insufficient funds in his/her trust account to pay for the assessed fee(s), a lien in the amount of the fee(s) will be placed on the inmate's trust account against future monies which may be received. (Stewart Aff. ¶ 19.)

On November 10, 2006, Nurse Stewart examined Plaintiff due to his refusal to eat the meals served to him. Plaintiff appeared alert and healthy, although he had bad body odor due to his refusal to shower. Plaintiff showed no signs of dehydration. Nurse Stewart asked him why he was not eating and he stated that the "pudding" was "impure" and the "water has too many chemicals." He also stated that he only eats goat, lamb, and baked white fish and that he does not eat vegetables or white bread. Nurse Stewart offered him Ensure drink or milk to drink but he refused and stated those were both against his religion. Plaintiff stated that he would drink water until he was served food he could eat. (Stewart Aff. ¶ 20; Exhibit K, Plaintiff's Medical File.)

Nurse Stewart started a log sheet for corrections officers to write at each meal whether Plaintiff refused or accepted his tray. Stewart sent a note to the kitchen staff alerting them to the

fact that at booking, Plaintiff stated that due to his religion he does not eat pork or white bread. Nurse Stewart made an appointment for Plaintiff to be examined by Dr. McFarland and also spoke with Major Torbert regarding her examination of Plaintiff. (Stewart Aff. ¶ 21; Ex. K, Plaintiff's Medical File.)

Nurse Griffith examined Plaintiff on November 11, 2006 due to his refusal to eat breakfast or lunch on this date. Corrections officers informed Griffith that Plaintiff was drinking fluids. Nurse Griffith spoke with Officer Crawl about Plaintiff's meals. Officer Crawl stated to Griffith that she was trying to send food to accommodate his religious beliefs by sending wheat bread and rice to him. Griffith asked her to continue to do so. (Griffith Aff. ¶ 5; Ex. K, Plaintiff's Medical File.)

Nurse Griffith examined Plaintiff again in the evening of November 11, 2006 due to his complaints of his stomach hurting and that standing made him dizzy. Griffith observed that he was calm and steady in his movements and that his gait was steady. Plaintiff's vital signs were stable. Plaintiff told Griffith that he was not eating because he only eats organic peanut butter, pita bread, lamb, and fish that have not been fried. Plaintiff stated to Nurse Griffith that he was not eating wheat bread because he does not like wheat bread. Plaintiff stated that he was not drinking the water that came out of the kitchen faucet or the faucet in his cell because these faucets have bacteria on them. He stated that he only drinks purified water. Griffith instructed that Plaintiff be moved to a medical observation cell so that he could be observed 24 hours a day. Griffith spoke with Major Torbert about her examination of Plaintiff. Griffith and Torbert discussed continuing to send Plaintiff food, Plaintiff's refusal to shower and placing Plaintiff in a medical observation cell. Nurse Griffith also contacted Dr. McFarland regarding Plaintiff. (Griffith Aff. ¶ 6; Ex. K, Plaintiff's Medical File.)

Dr. McFarland examined Plaintiff on November 14, 2006 due to his refusal to eat or bathe while housed in a medical observation cell. McFarland noted that Plaintiff was having difficulty adjusting to living at the Detention Center. Plaintiff stated to Dr. McFarland that because of his Muslim religion he does not eat the food or water at the jail. However, on this date McFarland noted that his weight had increased four pounds since the date he was incarcerated in the Detention Center and had increased since he was weighed on November 11, 2006. Dr. McFarland examined Plaintiff and noted that he had a normal, conformable gait and that his blood pressure was normal. McFarland noted that Plaintiff had poor hygiene, a poor attitude and poor interactions. McFarland instructed that Plaintiff's vital signs continue to be taken each day and that food and water be offered to him each day. McFarland also instructed that he examine Plaintiff again in a week. (McFarland Aff. ¶ 4; Ex. K, Plaintiff's Medical File.)

On November 17, 2006, Major Torbert interviewed Plaintiff regarding after Plaintiff submitted a request from stating that due to his religious beliefs he could not eat the food served at the jail. At this same time, Plaintiff requested that he be served goat, lamb, rice and water. Major Torbert told him that the jail does not provide goat and lamb. Major Torbert asked him what he ate while in D.O.C. custody, and he responded that he ate rice, brown bread and water. Major Torbert had the kitchen staff make him some rice and brown bread and bring it to him in hopes of getting him to eat. Major Torbert also instructed Plaintiff to take a shower, as he was refusing to shower, claiming he was too weak. (Torbert Aff. ¶ 13.)

Dr. McFarland again examined Plaintiff on November 21, 2006. Plaintiff appeared to be doing well and stated that he was currently eating but could not eat "most things" served at the jail. Plaintiff stated that he has told jail officers that he is not eating although he has been observed eating by officers. During Plaintiff's examination, Dr. McFarland observed food

particles in his mouth. McFarland instructed that staff continue to check Plaintiff's weight to ensure that it remained stable. McFarland also determined that Plaintiff's request to return to the general population and get away from the 24 hour camera observation could be granted as long as Plaintiff continued to eat and his weight remained stable or increased. (McFarland Aff. ¶ 5; Ex. K, Plaintiff's Medical File.)

Dr. McFarland followed up on Plaintiff's condition with an examination on November 27, 2006. On this date, Plaintiff stated that he has no problems and that he is "kind of liking it" in the jail. McFarland observed that his weight had remained stable, that his gait was normal and that his abdomen was soft and not tender, McFarland authorized his return to the general population. (McFarland Aff. ¶ 6; Ex. K, Plaintiff's Medical File.)

Nurse Stewart and Nurse Griffith followed Dr. McFarland's orders with regard to the Plaintiff's medical care. In fact, per the policy of the Lee County Sheriff's Office, Nurse Stewart and Nurse Griffith always follow the instructions of Dr. McFarland on all medical issues. (Griffith Aff. ¶ 8; Stewart Aff. ¶ 22.)

Detention center medical staff has complied with all policies and procedures of the Lee County Detention Facility. Medical staff are not aware of nor have they authorized or allowed any deviation from said policies and procedures. (McFarland Aff. ¶ 8; Griffith Aff. ¶ 3; Stewart Aff. ¶ 4.)

## C.  CONDITIONS OF CONFINEMENT CLAIMS (NOT ALLOWED ONE HOUR OF OUT TIME).

While housed in the medical observation cell, Plaintiff was offered time in the exercise yard of 45 minutes to one hour every day, but Plaintiff refused to go. Plaintiff stated he was too weak from not eating to leave his cell. (Torbert Aff. ¶ 21; Roberson Aff. ¶ 21; Threat Aff. ¶ 19.)

### D.     GRIEVANCE PROCEDURES.

It is the policy of the Lee County Sheriff's Office that members of the Detention Center staff receive and answer any written grievances or requests made by inmates to the sheriff, chief deputy sheriff, or Detention Center personnel.  (Jones Aff. ¶ 19; Torbert Aff. ¶ 24; Roberson Aff. ¶ 24; Threat Aff. ¶ 20.)

Inmates housed in the Lee County Detention Center are furnished with inmate request forms for the purpose of stating their requests or grievances in writing.  Detention Center personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate.  The officer receiving the request form is to answer the request if possible.  If that officer is unable to answer the request, he is to forward it to the appropriate individual and/or up the chain of command until the request is answered.  If the request form is directed to a particular officer, the officer receiving the request will forward the request to the officer to whom the request is directed.  If the officer to whom the request is directed is not on duty that day, the request will be addressed on that officer's next scheduled working day.  (Jones Aff. ¶ 20; Torbert Aff. ¶ 25; Roberson Aff. ¶ 25; Threat Aff. ¶ 21.)

Major Torbert has never received any request form from the Plaintiff concerning a refusal to let him practice his religion or regarding his exercise time.  On November 17, 2006, Torbert received an inmate request slip from Plaintiff stating he could not eat the food served to him due to his religion.  Major Torbert interviewed Plaintiff regarding this request.  (Torbert Aff. ¶ 26.)

Sheriff Jones, Sgt. Threat, Lt. Roberson, Officer Crawl, Nurse Griffith, Nurse Stewart and Dr. McFarland have never received any request form or complaint from Plaintiff concerning any of the allegations of his Complaint.  (Jones Aff. ¶ 21; Roberson Aff. ¶ 26; Threat Aff. ¶ 22;

Crawl Aff. ¶ 9; Griffith Aff. ¶ 9, Stewart Aff. ¶ 23; McFarland Aff. ¶ 9.)

Internal grievance procedures at the Lee County Detention Center are available to all inmates. It is the policy of the Lee County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon. (Jones Aff. ¶ 22; Torbert Aff. ¶ 28; Roberson Aff. ¶ 28; Threat Aff. ¶ 24.)

All inmates are provided a copy of the Lee County Detention Center Inmate Handbook when they are booked into the jail. Plaintiff signed a receipt showing that he had received a copy of the handbook and could read it. (Ex. A, Inmate File, Plaintiff's signed receipt of inmate handbook.) The inmate handbook states that an inmate may report a grievance on an inmate request form. Grievances are first answered by the appropriate staff at the lowest level in the chain of command. The inmate handbook also states that if the inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the Sheriff, who will make the final decision. (Jones Aff. ¶ 23; Torbert Aff. ¶ 29; Roberson Aff. ¶ 29; Threat Aff. ¶ 25.)

Per Lee County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to Sheriff Jones, Major Torbert, and Lt. Roberson if he were not satisfied with the response at the lower levels in the chain of command. The Plaintiff has not appealed any grievance to Sheriff Jones, Major Torbert, and Lt. Roberson me. Accordingly, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Center. (Jones Aff. ¶ 24; Torbert Aff. ¶ 30; Roberson Aff. ¶ 30.)

A copy of all grievances are filed in the inmate's file. However, the only grievance in the Plaintiff's inmate file concerns his complaint that he could not eat the jail food because of his religious beliefs. Had the Plaintiff made a request concerning any other allegations of his

Complaint a copy would have been placed in the Plaintiff's inmate file.  However, no such requests can be found in the Plaintiff's inmate file.  (Jones Aff. ¶ 25; Torbert Aff. ¶ 31; Roberson Aff. ¶ 31; Threat Aff. ¶ 26.)  It would be a violation of jail policy to refuse to provide an inmate with a grievance form or ignore a filed grievance.  (Jones Aff. ¶ 22.)

Sheriff Jones, Major Torbert, Officer Crawl, Sgt. Threat, Dr. McFarland, Nurse Stewart Nurse Griffith and Lt. Roberson have complied with all policies and procedures of the Lee County Detention Facility.  They are not aware of nor have they authorized or allowed any deviation from said policies and procedures.  (Jones Aff. ¶ 26; Torbert Aff. ¶ 32; Roberson Aff. ¶ 21; Threat Aff. ¶ 27; Crawl Aff. ¶ 10; McFarland Aff. ¶ 8; Griffith Aff. ¶ 3; Stewart ¶ 4.)

## II.     LAW

### A.     All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a

person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983, and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3 (11th Cir. 1990).

**B.     Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

**1.     Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e (a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  First, the Plaintiff has not exhausted the grievance procedures provided at the Lee County Detention Facility.  Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).  Despite the availability of a grievance procedure at the Lee County Detention Facility, Plaintiff did not file a grievance with the Lee County Detention Facility.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60.  The Sheriff of Lee County is a state officer, as are his alter egos, and therefore would be entitled to sovereign immunity.  See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998).  Due to this immunity, the State of Alabama has provided

an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies). [10]

> **2.    Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act requires that a plaintiff demonstrate that he suffered physical injury before instituting a complaint based upon jail conditions.  The PLRA states the following concerning physical injury:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.  42 U.S.C. § 1997e(e).

The Eleventh Circuit has determined that the physical injury requirement of § 1997e(e) requires that a plaintiff demonstrate a physical injury that is more than *de minimis* although the injuries do not have to be significant.  Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir.), vacated, 197 F.3d (11th Cir. 1999), reinstated in relevant part, Harris v. Garner, 216 F.3d 970 (11th Cir.

---

[10] See Terry Shane Williams v. Cecil Reed, et al., United States District Court for the Northern District of Alabama, Middle Division, No. CV-99-BU-2938-M, slip op. at 3-4 (N.D. Ala. August 15, 2000) (adopted by district judge September 21, 2000) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies at the DeKalb County Jail); Richard Dale Woodham v. Bill Lands, United States District Court for the Northern District of Alabama, Middle Division, No. CV-00-AR-0170-M, slip op. at 4-5 (N.D. Ala. November 7, 2000) (adopted by district judge December 4, 2000) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies at the DeKalb County Jail); Quinton M. Johnson v. Sgt. Robinson, et al., United States District Court for the Middle District of Alabama, Eastern Division, No. CV-00-D-616-E, slip op. at 3-5 (M.D. Ala. January 12, 2001) (adopted by district judge January 31, 2001) (dismissing the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); David Wilson Bell, Sr. v. Tina Riley, et al., United States District Court for the Middle District of Alabama, Eastern Division, No. CV-00-D-731-E, slip op. at 4-5 (M.D. Ala. February 21, 2001) (adopted by district judge March 20, 2001) (dismissing the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); Mitchell Lee Hicks v. Jack Day, et al., Circuit Court of Clarke County, Alabama, No. CV-00-280M, slip op. 1-3 (March 21, 2001) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); But see, Garner v. Weeks, No. 00-14582 (11th Cir. April 10, 2001).

2000) (en banc).  In the present action, Plaintiff suffered <u>no</u> physical injury as a result of the allegation described in his Complaint.  <u>See</u> Plaintiff's Complaint.  As a result, the case is due to be dismissed pursuant to 42 U.S.C § 1997e(e).

> **C.    Alternatively, Defendants are entitled to qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Defendants were acting within their discretionary authority as Sheriff and Detention Center officials of Lee County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties.  <u>See, e.g.</u> <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  <u>Id.</u>  (citing <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991)).  The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights?  <u>Willingham v. Loughnan</u>, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  <u>See</u> <u>Rodgers v. Horsley</u>, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  <u>Anderson v.</u>

Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

## 1.    Defendants are entitled to qualified immunity on Plaintiff's denial of religion claims.

In his Complaint, Plaintiff alleges that Defendants denied him a special diet warranted by his religious beliefs and denied him opportunity to practice his religion.  "Prisoners must be provided 'reasonable opportunities' to exercise their religious freedom guaranteed under the First Amendment."  Hudson v. Palmer, 468 U.S. 517, 523 (U.S. 1984) (other citations omitted).  The

19

Plaintiff's claims that the Defendants violated his First Amendment rights are unfounded. The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits government from establishing a religion or from prohibiting the free exercise thereof. Cruz v. Beto, 405 U.S. 319, 322 (1972). While in prison, inmates retain certain constitutional rights, including the right to exercise their religious beliefs. Id.; Cooper v. Pate, 378 U.S. 546 (1964). However, the proposition that "inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." Bell v. Wolfish, 441 U.S. 520, 545 (1979).

In Cruz, the United States Supreme Court held that prison officials must afford inmates a reasonable opportunity to practice their religion. See Cruz, 405 U.S. at 322 n.2. However, the Court explained that its holding was not to be construed as mandating that all religious groups found within an inmate population must have identical facilities or personnel, and special accommodations need not be given to all faiths. Id. The Court recognized that, as a general principle, a prison is not required to provide priests or ministers representing every faith among the inmate population. Id. The First Amendment does not require "the defendants to provide a Muslim leader at state expense any more than it requires them to provide a Catholic Priest or a Jewish rabbi or a minister for all of the various denominations of the Protestant religion." Thompson v. Commonwealth of Kentucky, 712 F.2d 1078, 1080 (6th Cir. 1983).

Thus, the Plaintiff's claim that his First Amendment rights were violated is without merit. The Lee County Detention Facility's policy regarding religious activities of inmates uses the least restrictive means in furthering a legitimate security and safety interest while allowing inmates reasonable opportunities to practice their religious freedom. See Brunskill v. Boyd, 141 Fed. Appx. 771, 774-76 (11th Cir. 2005). The evidence establishes that, although the Plaintiff

had the opportunity to request an individual religious visit from any clergy of his specific religion, he did not file any such request.  See Stovall, 471 F. Supp. at 1290 (holding that the prison chaplain had no duty to begin offering a certain type of religious activity until requested).

Plaintiff complains that he jail provides "no Muslim support or activities."  (Plaintiff's Compl. p. 3.)  However, Plaintiff failed to request any religious visitor.  The Plaintiff never requested a visit from a clergyman of his own religion, and never complained to jail staff that he was unable to practice his religion while incarcerated at the Lee County Detention Center. Clearly, Plaintiff was provided with more than reasonable opportunities to exercise his religious freedom and Defendants did not deny him the opportunity to practice his own religion. Additionally, Plaintiff does not allege that inmates of a different religion than the religion he practices were treated more favorably than he.

When assessing whether a prisoner was deprived of his constitutionally protected right to freely practice his religion, we have held that the district court must first "determine whether the prisoner is sincere in his or her asserted religious beliefs."  Martinelli v. Dugger, 817 F.2d 1499, 1503 (11th Cir.1987).  In other words, "[a] claimant meets this initial burden . . . if he or she proves that the beliefs are truly held and [are] religious in nature."  Id. at 1504.  Once the district court determines that the prisoner has a sincere free-exercise claim, it must evaluate whether the prison regulation or policy is reasonably related to a legitimate penological interest.  McCorkle v. Johnson, 881 F.2d 993, 995-96 (11th Cir.1989).  It is important to note that the reasonableness test is applied with a wide-ranging deference to the expert judgment of prison administrators. See Brightly v. Wainwright, 814 F.2d 612, 613 (11th Cir.1987).

There are several considerations that must be taken into account when examining the reasonableness of a prison regulation that infringes on an inmate's protected constitutional rights.

First, there must be a "'valid, rational connection' between the prison restriction and the legitimate governmental interest put forward to justify it." McCorkle, 881 F.2d at 995 (quoting Turner, 482 U.S. at 889). Second, the district court must examine whether "alternative means of exercising the asserted right remain open." Id. at 996. "The inquiry is whether, under the restrictions imposed, the plaintiff is deprived of all means of practicing his 'religion.'" Id. Third, the district court must consider the impact that accommodating "the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Id. Finally, the district court must determine "whether the regulation represents an 'exaggerated response' to prison concerns." Hakim v. Hicks, 223 F.3d 1244, 1247-48 (11th Cir.2000).

Every reasonable request made by Plaintiff for a special diet was accommodated by jail officials. Defendants attempted to honor Plaintiff's dietary requests. The facts establish that Defendants and jail staff tried to serve Plaintiff foods he stated he could eat. However, Plaintiff inconsistently stated what he could and could not eat. At booking Plaintiff stated he could not eat white bread or pork, a request which Defendants accommodated. Later when Plaintiff stated he could eat rice, wheat bread and water, jail official brought him these foods. When Plaintiff stated he would eat peanut butter, jail staff brought him peanut butter. On one occasion, Plaintiff stated he would eat goat and lamb. On another occasion, he stated he would eat baked white fish. Plaintiff stated he was not eating wheat bread *because he did not like it*. Plaintiff stated to medical staff that he does not eat vegetables. Plaintiff was observed eating chips he kept hidden beside his bed while housed in the medical observation cell for refusing to eat the food served to him. Plaintiff's Complaint states that he "do[es] not eat Kosher foods and [is] a vegetarian." (Plaintiff's Compl. p. 2.) Meals served to Plaintiff at the Lee County Detention Center are not

Kosher in nature.  Further, Plaintiff could easily maintain a vegetarian diet from the meals provided to him at the jail.  (Ex. I, Detention Center Menus for November 2006 through February 2007.)

Assuming, Plaintiff's dietary requests were sincerely based upon his religion, Defendants acted reasonably.  The Defendants cannot be at fault for failing to provide the Plaintiff with a special diet when they attempted to accommodate every one of Plaintiff's reasonable requests.

Because the Defendants in this case have provided the Plaintiff reasonable opportunities to practice his religion, they have not violated Plaintiff's constitutional rights.  Further, Plaintiff cannot show that clearly established law provided Defendants with fair warning that their conduct was unlawful.  Therefore, Defendants are entitled to qualified immunity on the Plaintiff's denial of religion claim.

**2.      Defendants are entitled to qualified immunity on Plaintiff's conditions of confinement claims.  (no food and no "out")**

In order to establish a conditions of confinement claim Plaintiff "must prove three elements:    (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation.  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90 (11th Cir. 1982) (third element).  Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry.  Wilson v. Seiter, 502 U.S. at 290.  In the instant case, the Plaintiff cannot establish either the objective or subjective components of his conditions of confinement claims.

23

### a.    Objective Component

With regard to the objective component, the Eleventh Circuit has held that "*extreme deprivations are required to make out a conditions-of-confinement claim*" under the Eighth Amendment.[11]  Chandler v. Crosby, 379 F.3d 1278, 1298 (11th Cir. 2004) (emphasis in original).  "[A] constitutional violation occurs only where the deprivation alleged is, objectively, 'sufficiently serious.'"  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  "[T]he Constitution does not mandate comfortable prisons."  Chandler, 379 F.3d. at 1289.  In the instant case, the Plaintiff cannot present evidence of any *extreme* deprivation that could be objectively considered "cruel and unusual."

Plaintiff's Complaint states that he has not received a meal from 11-3-06 through 11-16-06 and that he asks at every feeding for food.  (Plaintiff's Compl. p. 2.)  However, Plaintiff also states that he is on "24 hr. lockdown" for refusing to eat, indicating Defendants were trying to feed him.  (Plaintiff's Compl. p. 2.)  The evidence establishes that Plaintiff was delivered meals on the dates he claims to have not received food; however, Plaintiff chose not to eat and was therefore placed in medical observation.  Plaintiff also complains of "not receiving at least one hour a day out while under lockdown."  (Plaintiff's Compl. p. 3.)  However, Defendants offered him 45 minutes to one hour out of his medical observation cell everyday but he refused.  Further, Plaintiff's weight increased and Dr. McFarland observed food particles in his mouth then Plaintiff told McFarland he was not eating.  Plaintiff was offered Ensure nutritional drink, but refused.  Also, Plaintiff had two personal visitors to encourage him to eat.  Thus, Plaintiff has failed to allege an extreme deprivation.

---

[11] "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.  But it makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving pretrial detainees.'"  Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (internal citations omitted).

See Wilson v. Blankenship, 163 F.3d 1284, 1293 (11th Cir. 1998) (holding no constitutional violation where, although inmate could not exercise outdoors, they "presented no documented reason that he could not have engaged in indoor exercise." Harris v. Fleming, 839 F.2d 1232 (7th Cir. 1988) (denial of outdoor exercise for four weeks is not a constitutional violation where inmate could have improvised temporarily by exercising in his cell); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993) (holding that only receiving two meals a day is not cruel and unusual punishment); Berry v. Brady, 192 F.3d 504, 508 (5th Cir. 1999) (upholding dismissal of "section 1983 claim for missing eight meals as frivolous."); Hamilton v. Peters, 919 F. Supp. 1168 (N.D. Ill. 1996) (holding that "denying a prisoner regular showers and ample supplies of toiletries for a finite period, such as twenty-eight days, does not demonstrate a deprivation of the 'minimal civilized measure of life's necessities'").

Clearly, the Plaintiff's conditions of confinement are not extreme as would form a constitutional violation.

### b.     Subjective Component

Even if the Plaintiff's conditions of confinement were objectively "cruel and unusual," there must still be evidence of subjective deliberant indifference on the part of each Defendant. "To be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993). "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" Id. (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986). There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions. Id. at 837-839. No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996). Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. LaMarca, 995 F.2d at 1536. Furthermore, the United States Supreme Court has held that a significant injury is required in order to sustain a conditions of confinement claim. Porter v. Nussle, 534 U.S. 516, 528 (U.S. 2002).

Plaintiff cannot show that Defendants have been deliberately indifferent with regard to the conditions of confinement at the Lee County Detention Facility. Plaintiff has failed to allege or offer any evidence sufficient to sustain a claim that any actions of the Defendants constituted cruel and unusual punishment. In this case, none of the conditions of which Plaintiff complains constitutes an excessive risk to his health or safety. Plaintiff has not shown how he has been injured as a result of any of his allegations. Furthermore, the Plaintiff has not presented sufficient evidence to show that any impairment to his physical or mental condition actually resulted from the aforementioned environment. In the instant case, even if there were an excessive risk to his health or safety, the Plaintiff has not sufficiently alleged that any of the Defendants knew of or disregarded that risk. There are no request slips in the Plaintiff's file regarding his allegations of the conditions of his confinement. The Plaintiff has failed to sufficiently allege how each Defendant was deliberately indifferent to any alleged conditions. Plaintiff has failed to allege

that he suffered any injury as a result of the conditions of his confinement. Further, it is clear that Nurse Stewart, Nurse Griffith and Dr. McFarland have neither duty nor authority with regard to the nonmedical jail conditions, as they are responsible for medical care only.

Based on the foregoing, it is clear that the Defendants did not violate Plaintiff's constitutional rights. Further, Plaintiff cannot show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. Therefore, the Defendants are entitled to qualified immunity. Because the Plaintiff cannot meet the objective or subjective tests as set forth in Farmer, *supra*, his conditions of confinement claims are due to be dismissed.

**D.    Plaintiff has failed to allege sufficient personal involvement on each claim.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury. Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

The Plaintiff has failed to allege that Defendants were in any way personally involved in any alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no allegation demonstrating that these named Defendants were in any way involved in the actions he claims were constitutionally infirm. There are absolutely no facts to show that Defendants personally participated in his claims, nor does the Plaintiff allege specifically how these Defendants violated his constitutional rights. As such, all Plaintiff's claims are due to be dismissed.

**E.    To the extent that any claims against the Defendants are based on the theory of *respondeat superior*, such claims must fail.**

To the extent that Plaintiff's claims are an attempt to hold the Defendants liable under a

*respondeat superior* theory, his claim must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*.   Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation.   The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

Dolihite v. Maughon, 74 F.3d 1027, 1052 (11th Cir. 1996).

### F.    Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.   Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).   However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts."   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).   Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.   See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).   "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[12]   "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

---

[12] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff in the Complaint. Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 20th day of February, 2007.

**s/Ashley Hawkins Freeman**
ASHLEY HAWKINS FREEMAN Bar No. FRE044
Attorney for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama 36124
Telephone: (334) 262-1850
Fax: (334) 262-1889
E-mail: afreeman@webbeley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the **20th** day of **February, 2007**, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Amir Abdul Al-Hakim
Lee County Detention Center
P.O. Box 2407
Opelika, AL 36801

**s/Ashley Hawkins Freeman**
OF COUNSEL

**Exhibit A**
**Inmate File of Amir Abdul Al-Hakim**
**(also known as Wayne Harris)**

```
                              LEE COUNTY SHERIFF'S OFFICE
11/04/2006    02:31:27         INMATE BOOKING SHEET                  PAGE    1
================================================================================
BOOKING NO: 060005349

INMATE NAME: AL-HAKIM AMIR ABDUL                 RACE: B      SEX: M
      ALIAS: WAYNE HARRIS                          HT: 5'10"  HAIR: BLK
      ALIAS:                                       WT: 135    EYES: BRO
    ADDRESS: 122 PLUM AVE                      COMPLEX: LBR
 CITY/ST/ZIP: OPELIKA, AL 36804
 HOME PHONE: 000-000-0334                         SSN:
        DOB: ██████████  AGE:  35            DL ST:         DLN:
 PLCE BIRTH: OPELIKA                               SID: 195540A
      STATE: AL                                  LOCID: 11307
  M. STATUS: MARRIED
   RELIGION: MUSLIM
 GANG ASSOC: NONE
SCARS/TATTOOS: 8 TATOOS;ONE ON LEFT EYE & ON BOTH ARMS
KNOWN ENEMIES: NONE
    REMARKS:
------------------------------- NEXT OF KIN ------------------------------------
 NEXT OF KIN: RUTH COBB                   RELATIONSHIP: AUNT
     ADDRESS: 809 S. 4TH ST                     PHONE: 000-745-2708
 CITY/ST/ZIP: OPELIKA, AL 36801
     REMARKS:
------------------------------- EMPLOYER INFO ----------------------------------
    EMPLOYED: Y
EMPLOYER NAME: SELF
     ADDRESS:
 CITY/ST/ZIP: ,
       PHONE: 000-000-0000
-------------------------------- MEDICAL ---------------------------------------
 HANDICAPPED: N   NEEDS: N
     GLASSES: N   SMOKE: N
MEDICAL NEEDS: N   NEEDS: DOESN'T EAT PORK;IS A MUSLIM
   PHYSICIAN:                        PHONE: 000-000-0000
     REMARKS: DON'T EAT WHITE BREAD

     REMARKS:
     REMARKS:
-------------------------------- PROPERTY --------------------------------------
        CASH:      $00.00
 DESCRIPTION:
ADD. PROPERTY: STREET CLOTHES,1 RING(SILVER IN COLOR),1 CAP,2 INK PENS,1 BE
ADD. PROPERTY: LT,PERSONAL PAPERS.
ADD. PROPERTY:
  BIN NUMBER: 90
VEH IMPOUNDED: N
 IMPOUND LOT:
     REMARKS:
     REMARKS:
================================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.

INMATE:_____  DATE:_____  TIME:_____

BOOK OFFICER: Dowdell       DATE: 11.3.06  TIME:_____
```

```
                        ` LEE COUNTY SHERIFF'S OFFICE`
.11/03/2006    23:56:37      INMATE BOOKING SHEET                PAGE    1
===========================================================================
BOOKING NO: 060005349

INMATE NAME: HARRIS WAYNE AMIR
      ALIAS: AMIR ABDUL AL-HAKIM            RACE: B     SEX: M
      ALIAS:                                 HT: 5'10"  HAIR: BLK
    ADDRESS: 122 PLUM AVE                     WT: 135   EYES: BRO
CITY/ST/ZIP: OPELIKA, AL 36804          COMPLEX: LBR
 HOME PHONE: 000-000-0334                    SSN: ████████8
        DOB: ████████1  AGE:  35          DL ST:          DLN:
 PLCE BIRTH: OPELIKA                         SID: 195540A
      STATE: AL                            LOCID: 11307
  M. STATUS: MARRIED
   RELIGION: MUSLIM
 GANG ASSOC: NONE
SCARS/TATTOOS: 8 TATOOS;ONE ON LEFT EYE & ON BOTH ARMS
KNOWN ENEMIES: NONE
    REMARKS:
------------------------------ NEXT OF KIN ------------------------------
 NEXT OF KIN: RUTH COBB                RELATIONSHIP: AUNT
     ADDRESS: 809 S. 4TH ST                   PHONE: 000-745-2708
 CITY/ST/ZIP: OPELIKA, AL 36801
     REMARKS:
----------------------------- EMPLOYER INFO -----------------------------
    EMPLOYED: Y
EMPLOYER NAME: SELF
     ADDRESS:
 CITY/ST/ZIP: ,
       PHONE: 000-000-0000
-------------------------------- MEDICAL --------------------------------
 HANDICAPPED: N   NEEDS: N
     GLASSES: N   SMOKE: N
MEDICAL NEEDS: N   NEEDS: DOESN'T EAT PORK;IS A MUSLIM
   PHYSICIAN:                 PHONE: 000-000-0000
     REMARKS: DON'T EAT WHITE BREAD

     REMARKS:
     REMARKS:
-------------------------------- PROPERTY -------------------------------
        CASH:      $00.00
 DESCRIPTION:
ADD. PROPERTY: STREET CLOTHES,1 RING(SILVER IN COLOR),1 CAP,2 INK PENS,1 BE
ADD. PROPERTY: LT,PERSONAL PAPERS.
ADD. PROPERTY:
  BIN NUMBER: 90
VEH IMPOUNDED: N
 IMPOUND LOT:
     REMARKS:
     REMARKS:
===========================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.

INMATE: Amir A al-Hakim        DATE: 11/03/06  TIME: 23.56

BOOK OFFICER: Dowdell          DATE: 11/03/06  TIME: 23.56
```

```
                              LEE COUNTY SHERIFF'S OFFICE
-11/04/2006    02:31:27        INMATE BOOKING SHEET                    PAGE    2
================================================================================
BOOKING NO: 060005349    INMATE NAME: AL-HAKIM AMIR ABDUL
================================================================================
            COURT:                        ATTORNEY ON REC:
            JUDGE:                            PHONE: 000-000-0000
          REMARKS:
          REMARKS:
--------------------------------------------------------------------------------
     BOOK DATE: 11/03/2006  BOOK TIME: 23:49  BOOK TYPE: NORMAL

   ARREST DATE: 11/03/2006          BOOKING OFFICER: DOWDELL S
   ARREST DEPT: LCSO                CELL ASSIGNMENT: F6
 ARRST OFFICER: LCSO                      MEAL CODE: 01   LEE COUNTY
 PROJ. RLSDATE: 00/00/0000                 FACILITY: 01   COUNTY JAIL
 SEARCH OFFCR: SELLERS              CLASSIFICATION:
   TYPE SEARCH: DRESSED OUT            WORK RELEASE: N
 INTOX RESULTS: SOBER

         HOLDS: N
        AGENCY:              REASON:
        AGENCY:              REASON:
        AGENCY:              REASON:
        AGENCY:              REASON:

         NOTES:
         NOTES:
         NOTES:
```

```
                              LEE COUNTY SHERIFF'S OFFICE
 11/04/2006    02:31:27         INMATE CHARGE SHEET                    PAGE    3
===============================================================================
BOOKING NO: 060005349    INMATE NAME: AL-HAKIM AMIR ABDUL
===============================================================================
    CHARGE NO:   1  DISPOSITION: OPEN             HOLD: N

ALA STATUTE: CC1997-000181.00      # OF COUNTS:   1
    OFFENSE: FTA(CASE APPEAL)         WARRANT #:
    CASE #: CC97-181
  BOND AMT: 0                              FINE:      $0.00
  BAIL AMT: 0
INIT APPEAR: 00/00/0000            SENTENCE DATE: 00/00/0000
RELEASE DTE: 00/00/0000
ARREST DATE: 11/03/2006            ARST AGENCY: LCSO
ARST OFFICR: RUSH                      COUNTY: LEE
      COURT: CIRCUIT                    JUDGE: WALKER
DEF ATTORNY:                       DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
-------------------------------------------------------------------------------
    CHARGE NO:   2  DISPOSITION: OPEN             HOLD: N

ALA STATUTE: CC1997-001110.00      # OF COUNTS:   1
    OFFENSE: FTA/POSS REC CON SUB     WARRANT #:
    CASE #: CC11997-001110.00
  BOND AMT: 0                              FINE:      $0.00
  BAIL AMT: 0
INIT APPEAR: 00/00/0000            SENTENCE DATE: 00/00/0000
RELEASE DTE: 00/00/0000
ARREST DATE: 11/03/2006            ARST AGENCY: LCSO
ARST OFFICR: RUSH                      COUNTY: LEE
      COURT: CIRCUIT                    JUDGE: WALKER
DEF ATTORNY:                       DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
-------------------------------------------------------------------------------
    CHARGE NO:   3  DISPOSITION: OPEN             HOLD: N

ALA STATUTE: CS01-000366.00        # OF COUNTS:   1
    OFFENSE: CHILD SUPPORT            WARRANT #:
    CASE #: CS01-000366.00
  BOND AMT: 0                              FINE:      $0.00
  BAIL AMT: 0
INIT APPEAR: 00/00/0000            SENTENCE DATE: 00/00/0000
RELEASE DTE: 00/00/0000
ARREST DATE: 11/03/2006            ARST AGENCY: LCSO
ARST OFFICR: RUSH                      COUNTY: LEE
      COURT: DISTRICT                   JUDGE: LANE
DEF ATTORNY:                       DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
-------------------------------------------------------------------------------
```

```
                            LEE COUNTY SHERIFF'S OFFICE
·11/04/2006     02:31:27       INMATE CHARGE SHEET                    PAGE    4
================================================================================
BOOKING NO: 060005349      INMATE NAME: AL-HAKIM AMIR ABDUL
================================================================================
   CHARGE NO:   4  DISPOSITION: OPEN               HOLD: N

ALA STATUTE: CC1997-000032.00        # OF COUNTS:    0
    OFFENSE: FTA-CREDIT/DEBIT POSS/FRAD    WARRANT #:
     CASE #: CC1997-000032.00
   BOND AMT: 0                                 FINE:      $0.00
   BAIL AMT: 0
INIT APPEAR: 00/00/0000           SENTENCE DATE: 00/00/0000
RELEASE DTE: 00/00/0000
ARREST DATE: 11/03/2006           ARST AGENCY: LCSO
ARST OFFICR:RUSH                       COUNTY: LEE
      COURT: CIRCUIT                     JUDGE: WALKER
DEF ATTORNY:                     DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
--------------------------------------------------------------------------------
```

```
                          LEE COUNTY SHERIFF'S OFFICE
 11/04/2006    02:30:56        INMATE CHARGE SHEET                        PAGE    1
===================================================================================
BOOKING NO: 060005349    INMATE NAME: AL-HAKIM AMIR ABDUL
===================================================================================
   CHARGE NO:    1  DISPOSITION: OPEN                    HOLD: N

ALA STATUTE: CC1997-000181.00            # OF COUNTS:    1
     OFFENSE: FTA(CASE APPEAL)             WARRANT #:
     CASE #: CC97-181
   BOND AMT: 0                                  FINE:        $0.00
   BAIL AMT: 0
INIT APPEAR:                             SENTENCE DATE:
RELEASE DTE:
ARREST DATE: 11/03/2006                  ARST AGENCY: LCSO
ARST OFFICR: RUSH                            COUNTY: LEE
      COURT: CIRCUIT                           JUDGE: WALKER
DEF ATTORNY:                             DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
-----------------------------------------------------------------------------------
OFFENSE TYPE:     -
LEGAL STATUS:     -
       NOTES:
       NOTES:
       NOTES:

             Bonded Out:                      Preliminary Hearing:
Waived/Bound Over to GJ:                                 Indicted:
             Arraigned:                              Guilty Plea:
   Plea on Information:                           Guilty Verdict:
    Not Guilty Verdict:                                Dismissed:
          Bond Revoked:                         Bond Reinstated:
     Awaiting Probation:                       Probation Revoked:
   Probation Reinstated:                      Court Ordered Rehab:
    Returned from Rehab:                          Sent to D.O.C.:
```

```
                         LEE COUNTY SHERIFF'S OFFICE
 11/04/2006    02:30:56       INMATE CHARGE SHEET                      PAGE    2
================================================================================
BOOKING NO: 060005349    INMATE NAME: AL-HAKIM AMIR ABDUL
================================================================================
   CHARGE NO:    2  DISPOSITION: OPEN                HOLD: N

ALA STATUTE: CC1997-001110.00          # OF COUNTS:    1
     OFFENSE: FTA/POSS REC CON SUB        WARRANT #:
      CASE #: CC11997-001110.00
    BOND AMT: 0                                FINE:        $0.00
    BAIL AMT: 0
INIT APPEAR:                           SENTENCE DATE:
RELEASE DTE:
ARREST DATE: 11/03/2006                ARST AGENCY: LCSO
ARST OFFICR: RUSH                          COUNTY: LEE
      COURT: CIRCUIT                        JUDGE: WALKER
DEF ATTORNY:                           DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
--------------------------------------------------------------------------------
OFFENSE TYPE:    -
LEGAL STATUS:    -
       NOTES:
       NOTES:
       NOTES:

            Bonded Out:                     Preliminary Hearing:
 Waived/Bound Over to GJ:                              Indicted:
              Arraigned:                            Guilty Plea:
    Plea on Information:                          Guilty Verdict:
      Not Guilty Verdict:                             Dismissed:
           Bond Revoked:                       Bond Reinstated:
      Awaiting Probation:                     Probation Revoked:
   Probation Reinstated:                   Court Ordered Rehab:
     Returned from Rehab:                         Sent to D.O.C.:
```

```
                                LEE COUNTY SHERIFF'S OFFICE
 11/04/2006      02:30:56         INMATE CHARGE SHEET                        PAGE    3
=====================================================================================
BOOKING NO: 060005349    INMATE NAME: AL-HAKIM AMIR ABDUL
=====================================================================================
  CHARGE NO:    3  DISPOSITION: OPEN                   HOLD: N

ALA STATUTE: CS01-000366.00              # OF COUNTS:    1
    OFFENSE: CHILD SUPPORT                 WARRANT #:
    CASE #: CS01-000366.00
  BOND AMT: 0                                   FINE:        $0.00
  BAIL AMT: 0
INIT APPEAR:                            SENTENCE DATE:
RELEASE DTE:
ARREST DATE: 11/03/2006               ARST AGENCY: LCSO
ARST OFFICR: RUSH                         COUNTY: LEE
      COURT: DISTRICT                       JUDGE: LANE
DEF ATTORNY:                          DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
-------------------------------------------------------------------------------------
OFFENSE TYPE:    -
LEGAL STATUS:    -
       NOTES:
       NOTES:
       NOTES:

              Bonded Out:                           Preliminary Hearing:
Waived/Bound Over to GJ:                                       Indicted:
              Arraigned:                                    Guilty Plea:
    Plea on Information:                                 Guilty Verdict:
     Not Guilty Verdict:                                      Dismissed:
           Bond Revoked:                               Bond Reinstated:
      Awaiting Probation:                            Probation Revoked:
   Probation Reinstated:                          Court Ordered Rehab:
     Returned from Rehab:                                Sent to D.O.C.:
```

```
                                  LEE COUNTY SHERIFF'S OFFICE
·11/04/2006    02:30:56              INMATE CHARGE SHEET                          PAGE    4
=====================================================================================
BOOKING NO: 060005349    INMATE NAME: AL-HAKIM AMIR ABDUL
=====================================================================================
   CHARGE NO:    4  DISPOSITION: OPEN                    HOLD: N

ALA STATUTE: CC1997-000032.00          # OF COUNTS:    0
    OFFENSE: FTA-CREDIT/DEBIT POSS/FRAD    WARRANT #:
    CASE #: CC1997-000032.00
   BOND AMT: 0                              FINE:       $0.00
   BAIL AMT: 0
INIT APPEAR:                         SENTENCE DATE:
RELEASE DTE:
ARREST DATE: 11/03/2006              ARST AGENCY: LCSO
ARST OFFICR: USH                        COUNTY: LEE
      COURT: CIRCUIT                    JUDGE: WALKER
DEF ATTORNY:                         DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
------------------------------------------------------------------------------------
OFFENSE TYPE:    -
LEGAL STATUS:    -
      NOTES:
      NOTES:
      NOTES:

           Bonded Out:                         Preliminary Hearing:
Waived/Bound Over to GJ:                                  Indicted:
            Arraigned:                               Guilty Plea:
   Plea on Information:                            Guilty Verdict:
    Not Guilty Verdict:                                 Dismissed:
         Bond Revoked:                          Bond Reinstated:
    Awaiting Probation:                        Probation Revoked:
  Probation Reinstated:                      Court Ordered Rehab:
   Returned from Rehab:                            Sent to D.O.C.:
```

## LEE COUNTY SHERIFF'S DEPARTMENT
### SPECIAL REPORT

Subject _Al-Hakim Amir Abdul_ Opelika, AL _17 Nov 06_

To the Sheriff of Lee County:

I report the following _Having Food In His Personal Bag_

_____ which occurred at _18.50_ o'clock

this _____ $\rho$ M. at _LCDC_ _____

Below give full-particulars, together with name of principals and witness and their address

ON THE ABOVE DATE, SGT. TIM PAROUETTE ALONG WITH OFC'S TURBURT, FINLEY AND
TUCKER WERE PERFORMING HEAD COUNT OF E-1, WHEN DEPARTING THE CELL AL-HAKIM
AMIR ABDUL ASKED TO COME OUT TO SHOWER. WHILE COMING OUT THE CELL, SGT.
PARQUETTE ALONG WITH OFC TUCKER NOTICED I/M ABDUL HAD AN OPEN BAG
OF CREW CHIPS FROM THE COMMISSARY. WE ALSO NOTICED WHILE WATCHING HIM
ON CAMERA THAT HE IS HIDING SOMETHING BETWEEN THE TOILET AND HIS BUNK
WHATEVER IT IS, IS A FOOD ITEM.

Reported by _Sg/ J. Gill_

Address_____ Phone_____

Complaint received by _____ How _____

Assigned to _____

Case 3:06-cv-01049-MEF-CSC   Document 12-2   Filed 02/20/2007   Page 12 of 23

## Lee County Detention Center
## INMATE REQUEST SLIP

Name _Amir A. Al-Hakim_   Date _12-25-06_ A.C.

LOCATION
☐ Telephone Call   ☐ Doctor   ☐ Dentist   ☐ Time Sheet
☐ Special Visit   ☐ Personal Problem   ☑ Other _Sgt. Light_

Briefly Outline Your Request. Give To Jailer

tabb I need you to take $50.00 off my account & send it
to my wifey Frances Weaver 951 Siganah Rd Conyers
GA 30013 at your earliest convince if you need a stamp could
you I have one Shukrane (thank u)

Salaam (peace)
Amir

Do Not Write Below This Line - For Reply Only
CHECK ALREADY CUT FOR $173 ca

_John Lamb_
12-29-06

Approved _____ Denied _____ Collect Call _____

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To
Those The Request is Directed.
☐ Lieutenant   ☐ Chief Deputy   ☐ Sheriff
Date _____   Time Received _____

CORRECTION OFFICER _____

FORM: LCS-038 (6/99)

---

## Lee County Detention Center
## INMATE REQUEST SLIP

Name _Amir A. Al-Hakim_   Date _____

LOCATION
☐ Telephone Call   ☑ Doctor   ☐ Dentist   ☐ Time Sheet
☐ Special Visit   ☐ Personal Problem   ☐ Other

Briefly Outline Your Request. Give To Jailer

I need to get a some ACC knowledge of observation &
dehydration cause your have left my dietary meals insecure
moving. In muslim i need a soul's meal moving in post I
brief of anything with gelatin in it & my eating & so
cept my wife 2nd cop he trim of something &so
I will assume with the action is already in process

Jazak Allah

tngs of all my feel I etrullah(peace) is hatlul / commune

Do Not Write Below This Line - For Reply Only
Talk to inmate 11-17-06 @ 5:00 pm. Inmate
was advised no pork was serve we can boil the seperated
goat & lamb with rice & water only inmate was informed
that we dont serve lamb or goat in the facility when eats
he ate whole at D.O.C. he sandwiches, fried, water, chunk
Windful watu rice & legal he agree the could eat what
and greatly. Inmate was advised to both plea

Approved _____ Denied _____ Collect Call _____

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To
Those The Request is Directed.
☐ Lieutenant   ☐ Chief Deputy   ☐ Sheriff
Date _____   Time Received _____

CORRECTION OFFICER _____

FORM: LCS-038 (6/99)

# CHILD SUPPORT DIVISION
## LEE COUNTY JUSTICE CENTER
### 2311 GATEWAY DRIVE
### ROOM 102
### OPELIKA, AL 36801
### Phone: 334-737-3454
### Fax: 334-745-0266

TO: _Jail_

DATE: _11/7/06_

FROM: _Meredith_

SUBJECT: _Purge Amount_

TOTAL PAGES INCLUDING COVER SHEET: _2_

MESSAGE:

_Please inform inmate, Amir R. Al-Hakim, of his purge amount_

_Thank You_

# PURGE

The following person is incarcerated and needs a purge to be released from jail

**DEFENDANT: AMIR A. AL-HAKIM**

**CS: 2001-366**

**PLAINTIFF: PATRICIA MITCHELL**

**DHR #: 44660**
**DATE INCARCERATED: 11/06/2006**

**ARREARS OWED: $12,768.21**

**COMMENTS**

WRIT ISSUED ON 08/26/2002 FOR FAILURE TO APPEAR. DEFENDANT IS ORDERED TO PAY $173.00 PER MONTH AND HIS LAST PAYMENT WAS ON 11/17/2005.

$ _2500_ **Purge amount**

**Or**

☐ **Released from jail without purge**

☐ **Add to docket for review court date**

_____ **Judge's signature**

_10-7-06_ **Date**

**DOMESTIC VIOLENCE**
**DUAL ARREST** ☐

ALABAMA UNIFORM ARREST REPORT

Fingerprinted R84 Completed
☐ Yes ☐ No | ☑ Yes ☐ No

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

## IDENTIFICATION

| 1 ORI | 2 AGENCY NAME | 3 CASE # | 4 SFX |
|---|---|---|---|
| 0,4,3,0,0,0,0 | Lee County Sheriff's Office | 0,6,1,1,-,0,2,7,3 | |

| 5 LAST, FIRST, MIDDLE NAME | 6 ALIAS AKA |
|---|---|
| Al-Hakim, Amir Abdul | Wayne Harris "Teardrop" near right eye |

| 7 SEX ☑ M ☐ F | 8 RACE ☐ W ☑ B ☐ A ☐ H ☐ I ☐ O | 9 HGT 56 | 10 WGT 135 | 11 EYE Bro | 12 HAIR BlK | 13 SKIN | 14 | 15 SCARS | 16 MARKS | ☑ TATTOOS | ☐ AMPUTATIONS |

| 15 PLACE OF BIRTH (CITY, COUNTY STATE) | 16 SSN | 17 DATE OF BIRTH | 18 AGE 35 | 19 MISCELLANEOUS DESC |
|---|---|---|---|---|
| Opelika, Lee, Alabama | ▓▓▓▓▓ | ▓▓▓▓▓ | 35 | |

| 20 SID # | 21 FINGERPRINT CLASS | KEY | MAJOR | PRIMARY | SCDV | SUB-SECONDARY | FINAL | 22 DL # | 23 ST |
|---|---|---|---|---|---|---|---|---|---|
| | HENRY CLASS | | | | | | | | |
| 24 FBI # | NCIC CLASS | | | | | | 25 IDENTIFICATION COMMENTS | | |

| 26 ☐ RESIDENT ☐ NON-RESIDENT | 27 HOME ADDRESS (STREET, CITY, STATE, ZIP) 1299 Noth Court Atlanta, GA | 28 RESIDENCE PHONE | 29 OCCUPATION (BE SPECIFIC) |
|---|---|---|---|

| 30 EMPLOYER (NAME OF COMPANY/SCHOOL) | 31 BUSINESS ADDRESS (STREET, CITY, STATE, ZIP) | 32 BUSINESS PHONE |
|---|---|---|

## ARREST

| 33 LOCATION OF ARREST (STREET, CITY, STATE, ZIP) Lee County Detention Center | 34 SECTOR # | 35 ARRESTED FOR YOUR JURISDICTION? ☐ YES ☐ NO ☑ IN STATE ☐ OUT OF STATE AGENCY |
|---|---|---|

| 36 CONDITION OF ARRESTEE: | ☑ SOBER ☐ DRINKING ☐ DRUGS | 37 RESIST ARREST? ☐ YES ☑ NO | 38 INJURIES? ☑ NONE ☐ OFFICER ☐ ARRESTEE | 39 ARMED? ☐ Y ☑ N | 40 DESCRIPTION OF WEAPON ☐ HANDGUN ☐ OTHER FIREARM ☐ RIFLE ☐ OTHER WEAPON ☐ SHOTGUN |
|---|---|---|---|---|---|

| 41 DATE OF ARREST 14 03 06 | 42 TIME OF ARREST 23:50 ☐ AM ☑ PM ☐ MIL. | 43 DAY OF ARREST S M T W T☒ F S 1 2 3 4 5 6 7 | 44 TYPE OF ARREST ☑ ON VIEW ☐ CALL ☐ WARRANT | 45 ARRESTED BEFORE? ☑ YES ☐ NO ☐ UNKNOWN |
|---|---|---|---|---|

| 46 CHARGE – 1 ☑ FEL ☑ MISD FTA-Credit Card Poss/Fraud | 47 UCR CODE | 48 CHARGE – 2 ☐ FEL ☑ MISD FTA-Poss/Rec Contr Subs | 49 UCR CODE |
|---|---|---|---|
| 50 STATE CODE/LOCAL ORDINANCE | 51 WARRANT # CC1997000032.00 04 91 09 4 0 2 | 53 STATE CODE/LOCAL ORDINANCE CC1997001110.00 | 54 WARRANT # 04 91 09 4 0 2 | 55 DATE ISSUED |

| 56 CHARGE – 3 ☐ FEL ☑ MISD FTA-Child Support | 57 UCR CODE | 58 CHARGE – 4 ☐ FEL ☑ MISD FTA-Appeal | |
|---|---|---|---|
| 60 STATE CODE/LOCAL ORDINANCE | 61 WARRANT # CS2001000366.00 04 91 09 3 0 2 | 63 STATE CODE/LOCAL ORDINANCE CC1997000B100 | 64 WARRANT # 04 91 09 4 0 2 | 65 DATE ISSUED |

| 66 ARREST DISPOSITION ☐ HELD ☐ BAIL ☐ RELEASED ☐ TOT – LE ☐ OTHER | 67 IF OUT ON RELEASE WHAT TYPE? | 68 ARRESTED WITH (1) ACCOMPLICE (FULL NAME) |
|---|---|---|
| | | 69 ARRESTED WITH (2) ACCOMPLICE (FULL NAME) |

## VEHICLE

| 70 VYR | 71 VMA | 72 VMO | 73 VST | 74 VCO | TOP BOTTOM | 75 TAG # | 76 LIS | 77 LIY |
|---|---|---|---|---|---|---|---|---|

| 78 VIN | 79 IMPOUNDED? ☐ YES ☐ NO | 80 STORAGE LOCATION/IMPOUND # |
|---|---|---|

| 81 OTHER EVIDENCE SEIZED/PROPERTY SEIZED | ☐ CONTINUED IN NARRATIVE |
|---|---|

## JUVENILE

| 82 JUVENILE DISPOSITION ☐ HANDLED AND RELEASED ☐ REF. TO JUVENILE COURT ☐ REF. TO WELFARE AGENCY ☐ REF. TO OTHER POLICE AGENCY ☐ REF. TO ADULT COURT | 83 RELEASED TO |
|---|---|

| 84 PARENT OR GUARDIAN (LAST, FIRST, MIDDLE NAME) | 85 ADDRESS (STREET, CITY, STATE, ZIP) | 86 PHONE ( ) |
|---|---|---|

| 87 PARENTS EMPLOYER | 88 OCCUPATION | 89 ADDRESS (STREET, CITY, STATE, ZIP) | 90 PHONE ( ) |
|---|---|---|---|

## RELEASE

| 91 DATE AND TIME OF RELEASE M D Y : ☐ AM ☐ PM ☐ MIL. | 92 RELEASING OFFICER NAME | 93 AGENCY/DIVISION | 94 ID # |
|---|---|---|---|

| 95 RELEASED TO | 96 AGENCY/DIVISION | 97 AGENCY ADDRESS |
|---|---|---|

| 98 PERSONAL PROPERTY RELEASED TO ARRESTEE ☐ YES ☐ NO ☐ PARTIAL | 99 PROPERTY NOT RELEASED/HELD AT: | 100 PROPERTY # |
|---|---|---|

| 101 REMARKS (NOTE ANY INJURIES AT TIME OF RELEASE) | LOCAL USE |
|---|---|

| | STATE USE |
|---|---|

| 102 SIGNATURE OF RECEIVING OFFICER | 103 SIGNATURE OF RELEASING OFFICER |
|---|---|

| MULTIPLE CASES CLOSED | 104 CASE # | 105 SFX | 106 CASE # | 107 SFX | 108 CASE # | 109 SFX | 110 ADDITIONAL CASES CLOSED NARRATIVE ☐ Y ☐ N |
|---|---|---|---|---|---|---|---|

| 111 ARRESTING OFFICER (LAST, FIRST, M.) Rush, Bryan A. | 112 ID # 4356 | 113 ARRESTING OFFICER (LAST, FIRST, M.) | 114 ID # | 115 SUPERVISOR | 116 WATCH CMDR. |
|---|---|---|---|---|---|
| | | | ID # | ID # | |

**TYPE OR PRINT IN BLACK INK ONLY**

ACJIC — 34 REV. 7-04

## IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA
### FAMILY DIVISION

STATE OF ALABAMA, ex rel.,  
**Patricia Mitchell,**  
    Plaintiff,  

*CIVIL ACTION NO.  
   *       CS 2001 - 366  
   *  
VS.                *        DHR # 44660  
   *  
**Amir A. Al-Hakim,**     *  
    Defendant.     *

### ORDER

This case came for hearing on the 26th day of August, 2002, on a review.  Hon.

Margaret A. Mayfield, Assistant District Attorney, appeared for the State.  The

Defendant signed an acknowledgement on May 6, 2002 to return on August 26, 2002 at

1:00 pm.  The Defendant failed to appear.

**IT IS THEREFORE THE ORDER OF THIS COURT** that a Writ of Arrest for

failure to comply with the Orders of this Court shall be executed on the Defendant by

the Lee County Sheriff's Office or any Law Enforcement Office of the State of Alabama.

The Defendant shall be held without bond in the Lee County Jail until such time as the

Court determines the terms for his release.

Done this the 29 day of August, 2002

_____  
**RICHARD D. LANE**   **Circuit Judge**

Defendant's last known address: <u>122 Plum Avenue, Opelika, AL  36801</u>

Date of Birth: ▓▓▓▓▓  
Social Security No.: ▓▓▓▓▓  
Description:  **Black/Male**

**COPY TO:  LEE COUNTY SHERIFF'S OFFICE**

FILED  
SEP - 3 2002  
IN OFFICE  
CORINNE T. HURST  
CIRCUIT CLERK




# SHERIFF OF LEE COUNTY

## JAY JONES

P.O. BOX 688
OPELIKA, AL 36803-0688

E-mail:
lcso@mindspring.com

Phone (334) 749-5651
Fax (334) 749-4835

AKA: Hakim, Amir Abdul
Al-Hakim, Amir
Harris, Dewayne

DATE: Sept 10, 2003

RE: Wayne Harris

CHARGE: FTA - Control Subs, Appeal, Credit Card Fraud

To Whom It May Concern:

(X) I am enclosing a warrant(s) for the arrest of the above subject.  If located, please arrest and notify this department.

( ) Please file as a detainer.  We will extradite.

( ) Recall

** If unable to locate subject within 60 days please return warrant to this department.

Court Circuit          Warrant # CC97-1110, CC97-181, CC97-32

Address 140 Main St. NE (Deer Creek Apt. #44) - Conyers, GA

Race B   Sex M   DOB ▓▓▓▓   Hgt _____   Wgt _____

Eyes BRO   Hair BLK   Soc Sec # ▓▓▓▓▓▓▓▓

DL # _____   Employer _____

Bond Amount $   Ø   WE WILL EXTRADITE

Please be assured of our cooperation in all matters of mutual concern.

Respectfully,

Jay Jones, Sheriff

By: Bethany Fulgh
Warrants Clerk

Prints +
Photo on
File if needed
PJJ

CIRCUIT COURT OF LEE COUN.

ALIAS WARRANT                                CC 1997 001110.00
                        JID: HON. JACOB A. WALKER III

     THE  STATE OF ALABAMA        VS HARRIS WAYNE
TO ANY LAW ENFORCEMENT OFFICER:

YOU ARE HEREBY COMMANDED TO ARREST: HARRIS WAYNE
AND BRING HIM/HER BEFORE THIS COURT TO ANSWER THE STATE FOR THE CHARGE OF
FAILURE TO APPEAR ON THE CHARGE OF: POSS/REC CONTR. SUBS    - FELONY

WITNESS MY HAND THIS SEPTEMBER  4, 2002.

BOND SET AT: NO BOND        -           Corinne J. Hurst
                                        JUDGE/CLERK/MAGISTRATE

DEFENDANT'S ADDRESS:           DEFENDANT'S DESCRIPTION:
122 PLUM AVE                   HT: 000  WT: 000
                               HAIR:      EYE:
OPELIKA        , AL 36801 3781 BIRTH DATE:
                               RACE: B    SEX: M
                               SID#: 001320128
                               SSN#:

  ALIAS:  HARRIS DEWAYNE                HAKIM AMIR ABDUL
  EMPLOYER: _____  PHONE NO: _____
  TICKET NUMBER:               AGENCY/OFFICER: MOPD   /WILSON
NOTE: FAILED TO APPEAR FOR REVIEW HEARING

THIS APPEARS TO BE A VALID ADDRESS

  OFFICERS RETURN:
  RECEIVED ON _____
  EXECUTED ON _____    BY: _____
  ( ) DEFENDANT ARRESTED, RELEASED ON BOND
  ( ) DEFENDANT ARRESTED, IN JAIL
  ( ) DEFENDANT ARRESTED, NOT BOOKED
  ( ) NOT FOUND
  ( ) OTHER _____

  SHERIFF_____      OFFICER_____

  I, Bethany Fulabus Notary Public,
  do certify this warrant is a true and
  correct copy of the original on file
  at the Lee County Sheriff's Office.        **RECEIVED**
  MY COMMISSION EXPIRES DEC. 20, 2006

  Sworn this 10 day of Sept., 2003.           SEP 0 5 2002

OPERATOR:CEW
PREPARED:09/04/2002   AIN# 17966119      LEE COUNTY
                      NIC #W703200701     SHERIFFS DEPT.

CIRCUIT COURT OF LEE COUNTY

ALIAS WARRANT                           CC 1997 000181.00
                    JID: HON. JACOB A. WALKER III

---

    THE STATE OF ALABAMA           VS HARRIS WAYNE

TO ANY LAW ENFORCEMENT OFFICER:

YOU ARE HEREBY COMMANDED TO ARREST: HARRIS WAYNE
AND BRING HIM/HER BEFORE THIS COURT TO ANSWER THE STATE FOR THE CHARGE OF
FAILURE TO APPEAR ON THE CHARGE OF:  CASE APPEALED ON        - MISDEMEANOR

WITNESS MY HAND THIS SEPTEMBER 4, 2002.

BOND SET AT: NO BOND          -          _Corinne J. Hurst_
                                         JUDGE/CLERK/MAGISTRATE

---

DEFENDANT'S ADDRESS:              DEFENDANT'S DESCRIPTION:

122 PLUM AVE.                     HT: 000   WT: 000
                                  HAIR:      EYE:
OPELIKA          , AL 36801 0000  BIRTH DATE:
                                  RACE: B    SEX: M
                                  SID#: 000000000
                                  SSN#: 000000000

  ALIAS:

  EMPLOYER: _____  PHONE NO: _____

  TICKET NUMBER: MC96-1408      AGENCY/OFFICER: MOPD  /CARGILL

NOTE: FAILED TO APPEAR FOR REVIEW HEARING

THIS APPEARS TO BE A VALID ADDRESS

---

  OFFICERS RETURN:
  RECEIVED ON _____

  EXECUTED ON _____   BY: _____
  ( ) DEFENDANT ARRESTED, RELEASED ON BOND
  ( ) DEFENDANT ARRESTED, IN JAIL
  ( ) DEFENDANT ARRESTED, NOT BOOKED
  ( ) NOT FOUND
  ( ) OTHER _____


  SHERIFF_____   OFFICER_____


I, Bethany Tilak Notary Public,
do certify this warrant is a true and
correct copy of the original on file
at the Lee County Sheriff's Office.
MY COMMISSION EXPIRES DEC. 20, 2006

**RECEIVED**

SEP 0 5 2002

LEE COUNTY
SHERIFFS DEPT.

OPERATOR:LEW
PREPARED:09/04/ Sworn this 10 day of Sept , 2003

CIRCUIT COURT OF       LEE COUN

ALIAS WARRANT                          CC 1997 000032.00
JID: HON. JACOB A. WALKER III

--------------------------------------------------------------------

THE   STATE OF ALABAMA       VS HARRIS WAYNE

TO ANY LAW ENFORCEMENT OFFICER:

YOU ARE HEREBY COMMANDED TO ARREST: HARRIS WAYNE
AND BRING HIM/HER BEFORE THIS COURT TO ANSWER THE STATE FOR THE CHARGE OF
FAILURE TO APPEAR ON THE CHARGE OF: CREDIT/DEBIT CARD-POSS/F - FELONY

WITNESS MY HAND THIS SEPTEMBER  4, 2002.

BOND SET AT: NO BOND        -         *Corinne J. Hurst*
                                    JUDGE/CLERK/MAGISTRATE

--------------------------------------------------------------------
DEFENDANT'S ADDRESS:              DEFENDANT'S DESCRIPTION:

809 S FOURTH ST                   HT: 000    WT: 000
                                  HAIR:      EYE:
OPELIKA        , AL 36801 0000    BIRTH DATE:
                                  RACE: B    SEX: M
                                  SID#: 000000000
                                  SSN#:

  ALIAS:  WAYNE GANGSTER

  EMPLOYER: _____  PHONE NO: _____

  TICKET NUMBER:          AGENCY/OFFICER: MOPD   /GREELY

NOTE: FAILED TO APPEAR FOR REVIEW HEARING

THIS APPEARS TO BE A VALID ADDRESS
--------------------------------------------------------------------

  OFFICERS RETURN:
  RECEIVED ON _____

  EXECUTED ON _____   BY: _____
  ( ) DEFENDANT ARRESTED, RELEASED ON BOND
  ( ) DEFENDANT ARRESTED, IN JAIL
  ( ) DEFENDANT ARRESTED, NOT BOOKED
  ( ) NOT FOUND
  ( ) OTHER _____


  SHERIFF_____    OFFICER_____


I, *Bethany Fulk* Notary Public,           RECEIVED
do certify this warrant is a true and
correct copy of the original on file        SEP 0 5 2002
at the Lee County Sheriff's Office.
                                            LEE COUNTY
OPERATOR:LEW   MY COMMISSION EXPIRES DEC. 20, 2006   SHERIFFS DEPT.
PREPARED:09/04/2002
         Sworn this 10 day of Sept , 2003

Warrant No.: CC97-1110,CC5.-181,                                    Entered by GWEN
Warrant ID : 83131

ROCKDALE COUNTY SHERIFF'S OFFICE
911 Chambers Dr.,Conyers, Georgia 30012
WARRANT SHEET

SO #: _____                                                      GCIC/NCIC: GCIC

Location: OFF _____    Date: 09/13/03               WORKS AT SWEET
Comment: _____                                            HEART PLASTIC

Name: HARRIS,WAYNE
Sex: M  Race: B  POB: _____    DOB: ████████  Ht: _' _  Wt: _____
Eyes: BRO  Hair: BLK  FBI: _____                      SSN: ████████
FPC: _____
DL: _____
ADDR: 1140 MAIN ST. NE (DEER CREEK APT #44) CONYERS, GA 30012

DOW: 09/05/03 Date Rcvd: 09/13/03 Time Rcvd: _____        (H)
Nature: BW (BENCH WARRANT)  Source: OPELIKA, AL           770 761-
Docket: _____  Page: _____                            3442
Officer Assigned: 109 (PEARCE, RAYMOND (SGT)) Date Assigned: 09/13/03
Affiant: _____

Charge(s)........................    Recommended Bond   County of Origin.....
A) 5015 FAILURE TO APPEAR                               OPELIKA, AL
B)
C)                    (5/5/61) QUANTA JONES    878-413-2696 [S]
D)
Remarks:ORG CHRGS CONTROL SUBS, APPEALS, CREDIT CARD FRAUD

Alias Name.......................... Alias DOB....... Alias SSN....... Ali
HAKIM, AMIR ABDUL, AL-HAKIM, AMIR                    BETHAWIE
HARRIS, DEWAYNE

Warrant Service History
Date.... Time. Officer.......... Mil. Comment.........................

9-13 NC
9-17 SUBJECT TO TURN SELF IN.
10-2 NC
10-7 MOVED TO AL.
RENTWAY MIKE MANAGER
334-740-9927
WANTED OUT OF GWINNETT BAD CHECK
ALSO

RETURN TO ALABAMA

## LEE COUNTY SHERIFF'S DEPARTMENT
## REGULATIONS RECEIPT
### (Form #7)

Date: _03 November 2006_    Time: _11:45 pm_
   _(AKA)_

I, _Harris, Wayne_ _____, have received copy

number _____ of the Rules and Regulations governing inmates in the Lee County Jail which

I am/am not (mark one out) able to read. I understand that while in this institution I will abide

by these Rules and Regulations.

I will return the copy of the Rules and Regulations upon my release from jail. I also

understand that I will be responsible for the loss or any damage of the Inmate Rules and

Regulations Handbook and will be charged $2 for its replacement. I also understand that if I

fail to pay for the replacement of the lost or damaged handbook I will have additional criminal

charges filed against me for destruction of county property.


Years of School _12_

X _Amer abdul al-Rahim_
   Inmate's Signature


_____ has today received copy number _____ of the Lee

County Sheriff's Department Rules and Regulations for Inmates.

☑ Said inmate stated to me that he was able to read the Rules and Regulations.

☐ Said inmate stated that he was not able to read the Rules and Regulations and I explained
   the orientation rules to him.

_Dardell_
Jailer's Signature

Date: _11/3/06_    Time: _11:45 pm_

*Couldn't find file*

| State of Alabama Unified Judicial System | **ORDER OF RELEASE FROM JAIL** | Case Number |
|---|---|---|
| Form C-42    Rev 6/88 | | CC 97 032 |

IN THE _Circuit_ COURT OF _Lee_ COUNTY

STATE OF ALABAMA    v. _Wayne Harris_

**TO THE JAILER WITH CUSTODY OF THE DEFENDANT**

You are ordered to release from your custody the above named defendant, charged with the offense of ___

_FTA - fraud Use of Credit Card_

Reason for Release _jail credit off $187.00._

Date _12/29/06_                                  By: _____

COURT RECORD   (Original)      JAILER   (Copy)      Judge/Clerk

---

CS 01-366

| STATE OF ALABAMA UNIFIED JUDICIAL SYSTEM LEE COUNTY FORM CC-30 | **COMMITTAL TO CUSTODY** | CASE NUMBER CS 92-213.06 |
|---|---|---|
| | | ID    YR    Case No. |

Patricia Mitchell
Cynthia Tolbert
                    PLAINTIFF,

VS.

Amir Al-Hakim ___,
                    DEFENDANT.

IN THE _Circuit_ COURT OF

LEE COUNTY, ALABAMA

CASE NO. _CS 01-366_
_CS 92-213.06_

The defendant, _Amir Al-Hakim_ ___ is

hereby committed to the custody of the Sheriff of Lee County, Alabama for:
_FTP/ willful and contumacious civil contempt / HL LCI/ Purge# reduced to_
_$500 in CS 01-366 and remains $500 in CS 92-213.06_
                                   _Total 1,020.—_

Defendant's bond is hereby set at $ ___

DONE this the _18_ day of _Dec_ , _2006_.

_____ JUDGE

**Exhibit B**
**Affidavit of**
**Major Cary Torbert, Jr.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

AMIR ABDUL AL-HAKIM,                    )
                                        )
    Plaintiff,                          )
                                        )
v.                                      )    Civil Action No. 3:06-cv-01049-MEF-CSC
                                        )
LEE COUNTY JUSTICE CENTER, et al.)
                                        )
    Defendants.                         )

## AFFIDAVIT OF CARY TORBERT, JR.

STATE OF ALABAMA             )
                             )
COUNTY OF LEE                )

    **BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Cary Torbert, Jr., who being known to me and being by me first duly sworn on oath deposes and says as follows:

    1.    My name is Cary Torbert, Jr. I am over the age of nineteen and competent to execute this affidavit.

    2.    I serve as Chief Deputy of Corrections of the Lee County Detention Facility and have obtained the rank of Major. I have worked with the Lee County Sheriff's Office for over 34 years.

    3.    I am familiar with the Plaintiff, Amir Abdul Al-Hakim, also known as Wayne Harris, due to his incarceration in the Lee County Detention Facility.

    4.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

5.    The Plaintiff was a pretrial detainee at all times relevant to the allegations made the basis of the Plaintiff's Complaint.

6.    It is the policy of the Lee County Sheriff's Office to allow persons incarcerated in the Lee County Detention Center the opportunity to worship in the recognized religion of their choice, receive religious counseling, and attend in-house religious programs.

7.    Religious professionals and religious volunteers who wish to provide scheduled religious programs must be cleared by the Chief Deputy Sheriff before being admitted to the Detention Center.

8.    All religious visitors are subject to search and must comply with all visitor regulations.

9.    Religious volunteers who are approved may go into the dayroom and provide ministry in general population areas to those inmates who wish to participate.

10.    Religious volunteers may also make use of the multi-purpose area in order to hold religious services.

11.    Inmates in administrative segregation may receive ministry individually only.

12.    Religious services may be scheduled for a set time each week. Other services may be scheduled for other times with the Chief Deputy Sheriff's approval. Normally, there are religious services held on Wednesdays and Sundays. Inmates have the opportunity to request an individual religious visit for any Wednesday by filling out a request form and turning it in to any officer.

13.    Plaintiff never asked me for an individual religious visit. If any request was made by the Plaintiff for an individual religious visit, that request would have been answered, and a copy of the answered request would have been placed in the Plaintiff's inmate file. However,

upon review of the Plaintiff's inmate file, no such form is present.

14.     No inmate who, in the opinion of the Sheriff, Chief Deputy Sheriff, or Shift Supervisor, presents a security risk may attend religious services. Such inmates will be allowed free access to religious counseling or conferences on an individual basis.

15.     No member of the Detention Center staff may discriminate against any inmate on the basis on that inmate's choice of religion.

16.     The Lee County Sheriff's Office will not provide any religious materials of any nature to inmates at Sheriff's Office's expense.

17.     Menus for the inmates at the Lee County Detention Facility are written out each month based on an original pre-approved menu. The original pre-approved menu has been approved by a certified dietician at the Auburn University Extension Office. The dietitian has made any necessary revisions to the menu, which I then adopt, and approve the menu as meeting all nutritional requirements. This dietitian-approved menu is the basis for all meals that have been served to inmates in the Lee County Detention Facility over the past two years.

18.     Inmates receive ample amounts of dairy products, proteins and vegetables. Water is served to the inmates daily; also, inmates receive non-fat milk and fruit drinks several times a week. Further, healthy portions are served at each meal. Inmates are served meat daily. Inmates usually are served three to four different food items at every meal, offering a variety of food choices each day. Inmates are served fruit several times a week.

19.     During Plaintiff's incarceration, he has been served a meal three times a day each and every day he has been incarcerated. Because Plaintiff refused to eat, he was placed in the E-1 medical cell for observation. A camera in cell E-1 allows the officer in central

3

control to monitor that cell 24 hours a day. Through this camera, Plaintiff was observed by multiple officers eating potato chips, when he supposedly was not eating. On November 17, 2006, Plaintiff was observed by several officers with an open bag of corn chips in his room. He was also observed hiding food between his bunk and the toilet. After several days in the medical cell, Plaintiff began accepting his trays and then asked that he be put back into the general population.

20.    Because Plaintiff refused his trays, officers began keeping a log of when trays were offered to Plaintiff and whether he refused or accepted them.

21.    While housed in this medical cell, Plaintiff was offered time in the exercise yard, offered 45 minutes to one hour every day, but he refused to go. He stated he was too weak from not eating.

22.    During the time period when Plaintiff was refusing his trays, he was offered Ensure drink but he refused. Plaintiff was offered peanut butter and jelly on wheat bread, which he also refused.

23.    During the time period when Plaintiff was refusing his trays, Plaintiff's grandmother came to visit him regarding his refusal to eat. Plaintiff's grandmother also called the jail and set up a meeting between Plaintiff's Baptist preacher, Rev. Bandy, and Plaintiff so that Rev. Bandy could counsel him and encourage him to eat.

24.    It is the policy of the Lee County Sheriff's Office that members of the Detention Center staff receive and answer any written grievances or requests made by inmates to the sheriff, chief deputy sheriff, or Detention Center personnel.

25.    Inmates housed in the Lee County Detention Center are furnished with inmate request forms for the purpose of stating their requests or grievances in writing. Detention Center

personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate. The officer receiving the request form is to answer the request if possible. If that officer is unable to answer the request, he is to forward it to the appropriate individual and/or up the chain of command until the request is answered. If the request form is directed to a particular officer, the officer receiving the request will forward the request to the officer to whom the request is directed. If the officer to whom the request is directed is not on duty that day, the request will be addressed on that officer's next scheduled working day.

26.    I have never received any request form from the Plaintiff concerning a refusal to let him practice his religion or regarding his exercise time. On November 17, 2006, I received an inmate request slip from Plaintiff stating he could not eat the food served to him due to his religion. I interviewed Plaintiff regarding this request. Plaintiff requested that he be served goat, lamb, rice and water. I informed him that the jail does not provide goat and lamb. I asked him what he ate while in D.O.C. custody, and he responded that he ate rice, brown bread and water. I had the kitchen staff make him some rice and brown bread and bring it to him in hopes of getting him to eat. I also instructed Plaintiff to take a shower, as he was refusing to shower, claiming he was too weak.

27.    Plaintiff has been residing in the general population of the jail and eating normally for over two months.

28.    Internal grievance procedures at the Lee County Detention Center are available to all inmates. It is the policy of the Lee County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon.

29.    All inmates are provided a copy of the Lee County Detention Center Inmate Handbook when they are booked into the jail. Plaintiff signed a receipt showing that he had

received a copy of the handbook and could read it. The inmate handbook states that an inmate may report a grievance on an inmate request form. Grievances are first answered by the appropriate staff at the lowest level in the chain of command. The inmate handbook also states that if the inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the Sheriff, who will make the final decision.

30.    Per Lee County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to me if he were not satisfied with the response at the lower levels in the chain of command. The Plaintiff has not appealed any grievance to me. Accordingly, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Center.

31.    A copy of all grievances are filed in the inmate's file. However, the only grievance in the Plaintiff's inmate file concerns his complaint that he could not eat the jail food because of his religious beliefs. Had the Plaintiff made a request concerning any other allegations of his Complaint a copy would have been placed in the Plaintiff's inmate file. However, no such requests can be found in the Plaintiff's inmate file.

32.    I have complied with all policies and procedures of the Lee County Detention Facility. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

33.    All documents attached to the Special Report are true and accurate copies of jail documents kept by me in the ordinary course of my business. I am the custodian of these records.

6

34.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

_____
CARY TORBERT, JR.

**SWORN TO** and **SUBSCRIBED** before me this _16_ day of February, 2007.

_____
NOTARY PUBLIC
My Commission Expires:_____

MY COMMISSION EXPIRES FEB. 6, 2011

7

**Exhibit C
Affidavit of
Sheriff Jay Jones**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

AMIR ABDUL AL-HAKIM,       )
                               )
     Plaintiff,           )
                               )
v.                           )   Civil Action No. 3:06-cv-01049-MEF-CSC
                               )
LEE COUNTY JUSTICE CENTER, et al.)
                               )
     Defendants.         )

## AFFIDAVIT OF JAY JONES

STATE OF ALABAMA      )
                            )
COUNTY OF LEE         )

BEFORE ME, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Jay Jones, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Jay Jones. I am over the age of nineteen and competent to execute this affidavit.

2.    I am the duly elected Sheriff of Lee County, Alabama, and have served in such capacity since 1999.

3.    I am familiar with the Plaintiff, Amir Abdul Al-Hakim, also known as Wayne Harris, due to his incarceration in the Lee County Detention Facility. I have no personal knowledge of any of the specific allegations that form the basis of Plaintiff's Complaint.

4.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

5.    I have delegated the responsibility for the day-to-day functions of the Lee County Detention Facility to Major Cary Torbert, Jr., the Chief Deputy of Corrections of the Lee County Detention Facility.  As sheriff of Lee County, I am responsible for promulgating the policies governing the Lee County Detention Facility

6.    It is the policy of the Lee County Sheriff's Office to allow persons incarcerated in the Lee County Detention Center the opportunity to worship in the recognized religion of their choice, receive religious counseling, and attend in-house religious programs.

7.    Religious professionals and religious volunteers who wish to provide scheduled religious programs must be cleared by the chief deputy sheriff before being admitted to the Detention Center.

8.    All religious visitors are subject to search and must comply with all visitor regulations.

9.    Religious volunteers who are approved may go into the dayroom and provide ministry in general population areas to those inmates who wish to participate.

10.    Religious volunteers may also make use of the multi-purpose area in order to hold religious services.

11.    Inmates in administrative segregation may receive ministry individually only.

12.    Religious services may be scheduled for a set time each week.  Other services may be scheduled for other times with the chief deputy sheriff's approval.  Normally, there are religious services held on Wednesdays and Sundays.  Inmates have the opportunity to request an individual religious visit for any Wednesday by filling out a request form and turning it in to any officer.

13.    Plaintiff never asked me for an individual religious visit.  If any request was made

2

by the Plaintiff for an individual religious visit, that request would have been answered, and a copy of the answered request would have been placed in the Plaintiff's inmate file. However, upon review of the Plaintiff's inmate file, no such form is present.

14.    No inmate who, in the opinion of the sheriff, chief deputy sheriff, or shift supervisor, presents a security risk may attend religious services. Such inmates will be allowed free access to religious counseling or conferences on an individual basis.

15.    No member of the Detention Center staff may discriminate against any inmate on the basis on that inmate's choice of religion. Any member of the jail staff who engaged in such discrimination would be in violation of my policies.

16.    The Lee County Sheriff's Office will not provide any religious materials of any nature to inmates at Sheriff's Office's expense.

17.    Menus for the inmates at the Lee County Detention Facility are written out each month based on an original pre-approved menu. The original pre-approved menu has been approved by a certified dietician at the Auburn University Extension Office. This dietitian-approved menu is the basis for all meals that have been served to inmates in the Lee County Detention Facility over the past two years.

18.    Inmates receive ample amounts of dairy products, proteins and vegetables. Water is served to the inmates daily; also, inmates receive non-fat milk and fruit drinks several times a week. Further, healthy portions are served at each meal. Inmates are served meat daily. Inmates usually are served three to four different food items at every meal, offering a variety of food choices each day. Inmates are served fruit several times a week.

19.    It is the policy of the Lee County Sheriff's Office that members of the Detention Center staff receive and answer any written grievances or requests made by inmates to the

sheriff, chief deputy sheriff, or Detention Center personnel.

20.    Inmates housed in the Lee County Detention Center are furnished with inmate request forms for the purpose of stating their requests or grievances in writing. Detention Center personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate. The officer receiving the request form is to answer the request if possible. If that officer is unable to answer the request, he is to forward it to the appropriate individual and/or up the chain of command until the request is answered. If the request form is directed to a particular officer, the officer receiving the request will forward the request to the officer to whom the request is directed. If the officer to whom the request is directed is not on duty that day, the request will be addressed on that officer's next scheduled working day.

21.    I have never received any request form from the Plaintiff concerning any of the allegations of his Complaint.

22.    Internal grievance procedures at the Lee County Detention Center are available to all inmates. It is the policy of the Lee County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon. It would be a violation of jail policy to refuse to provide an inmate with a grievance form or ignore a filed grievance.

23.    All inmates are provided a copy of the Lee County Detention Center Inmate Handbook when they are booked into the jail. Plaintiff signed a receipt showing that he had received a copy of the handbook and could read it. The inmate handbook states that an inmate may report a grievance on an inmate request form. Grievances are first answered by the appropriate staff at the lowest level in the chain of command. The inmate handbook also states that

4

if the inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the sheriff, who will make the final decision.

24.    Per Lee County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to me if he were not satisfied with the response at the lower levels in the chain of command. The Plaintiff has not appealed any grievance to me. Accordingly, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Center.

25.    A copy of all grievances are filed in the inmate's file. However, the only grievance in the Plaintiff's inmate file concerns his complaint that he could not eat the jail food because of his religious beliefs. Had the Plaintiff made a request concerning any other allegations of his Complaint a copy would have been placed in the Plaintiff's inmate file. However, no such requests can be found in the Plaintiff's inmate file.

26.    I have complied with all policies and procedures of the Lee County Detention Facility. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

27.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

_____
JAY JONES

**SWORN TO** and **SUBSCRIBED** before me this 20 day of February, 2007.

_____
NOTARY PUBLIC
My Commission Expires: _MY COMMISSION EXPIRES FEB 6, 2011_

5

**Exhibit D
Affidavit of
Lieutenant Ray Roberson**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

AMIR ABDUL AL-HAKIM,                    )
                                        )
    Plaintiff,                          )
                                        )
v.                                      )    Civil Action No.  3:06-cv-01049-MEF-CSC
                                        )
LEE COUNTY JUSTICE CENTER, et al.)
                                        )
    Defendants.                         )

### AFFIDAVIT OF RAY ROBERSON

STATE OF ALABAMA          )
                          )
COUNTY OF LEE             )

    **BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Ray Roberson, who being known to me and being by me first duly sworn on oath deposes and says as follows:

    1.    My name is Ray Roberson. I am over the age of nineteen and competent to execute this affidavit.

    2.    I am employed with the Lee County Sheriff's Office and serve as Assistant Jail Administrator at the Lee County Detention Facility. I have worked in the Lee County Detention Facility for twenty-three years and have obtained the rank of lieutenant.

    3.    I am familiar with the Plaintiff, Amir Abdul Al-Hakim, also known as Wayne Harris, due to his incarceration in the Lee County Detention Facility.

    4.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

    5.    The Plaintiff was a pretrial detainee at all times relevant to the allegations made the basis of the Plaintiff's Complaint.

6.      It is the policy of the Lee County Sheriff's Office to allow persons incarcerated in the Lee County Detention Center the opportunity to worship in the recognized religion of their choice, receive religious counseling, and attend in-house religious programs.

7.      Religious professionals and religious volunteers who wish to provide scheduled religious programs must be cleared by the chief deputy sheriff before being admitted to the Detention Center.

8.      All religious visitors are subject to search and must comply with all visitor regulations.

9.      Religious volunteers who are approved may go into the dayroom and provide ministry in general population areas to those inmates who wish to participate.

10.     Religious volunteers may also make use of the multi-purpose area in order to hold religious services.

11.     Inmates in administrative segregation may receive ministry individually only.

12.     Religious services may be scheduled for a set time each week. Other services may be scheduled for other times with the chief deputy sheriff's approval. Normally, there are religious services held on Wednesdays and Sundays. Inmates have the opportunity to request an individual religious visit for any Wednesday by filling out a request form and turning it in to any officer.

13.     Plaintiff never asked me for an individual religious visit. If any request was made by the Plaintiff for an individual religious visit, that request would have been answered, and a copy of the answered request would have been placed in the Plaintiff's inmate file. However, upon review of the Plaintiff's inmate file, no such form is present.

14.     No inmate who, in the opinion of the sheriff, chief deputy sheriff, or shift supervisor, presents a security risk may attend religious services. Such inmates will be allowed

2

free access to religious counseling or conferences on an individual basis.

15. No member of the Detention Center staff may discriminate against any inmate on the basis on that inmate's choice of religion.

16. The Lee County Sheriff's Office will not provide any religious materials of any nature to inmates at Sheriff's Office's expense.

17. Menus for the inmates at the Lee County Detention Facility are written out each month based on an original pre-approved menu. The original pre-approved menu has been approved by a certified dietician at the Auburn University Extension Office. This dietitian-approved menu is the basis for all meals that have been served to inmates in the Lee County Detention Facility over the past two years.

18. Inmates receive ample amounts of dairy products, proteins and vegetables. Water is served to the inmates daily; also, inmates receive non-fat milk and fruit drinks several times a week. Further, healthy portions are served at each meal. Inmates are routinely served meat daily. Inmates usually are served three to four different food items at every meal, offering a variety of food choices each day. Inmates are served fruit several times a week.

19. During Plaintiff's incarceration, he has been served a meal three times a day each and every day he has been incarcerated. Because Plaintiff refused to eat, he was placed in the E-1 medical cell for observation. A camera in cell E-1 allows the officer in central control to monitor that cell 24 hours a day. Through this camera, Plaintiff was observed by multiple officers eating potato chips, when he supposedly was refusing to eat. On November 17, 2006, Plaintiff was observed by several officers with an open bag of corn chips in his room. He was also observed hiding food between his bunk and the toilet. After several days in the medical cell, Plaintiff began accepting his trays and then asked that he be put back into the general population.

3

20.     Because Plaintiff refused his trays, officers began keeping a log of when trays were offered to Plaintiff and whether he refused or accepted them.

21.     While housed in this medical cell, Plaintiff was offered time in the exercise yard. He was offered 45 minutes to one hour every day, but he refused to go. He stated he was too weak from not eating.

22.     During the time period when Plaintiff was refusing his trays, he was offered Ensure drink but he refused. Plaintiff was offered peanut butter and jelly on wheat bread, which he also refused.

23.     During the time period when Plaintiff was refusing his trays, Plaintiff's grandmother came to visit him regarding his refusal to eat. Plaintiff's grandmother also called the jail and set up a meeting between Plaintiff's Baptist preacher and Plaintiff so that Rev. Bandy could counsel him and encourage him to eat.

24.     It is the policy of the Lee County Sheriff's Office that members of the Detention Center staff receive and answer any written grievances or requests made by inmates to the sheriff, chief deputy sheriff, or Detention Center personnel.

25.     Inmates housed in the Lee County Detention Center are furnished with inmate request forms for the purpose of stating their requests or grievances in writing. Detention Center personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate. The officer receiving the request form is to answer the request if possible. If that officer is unable to answer the request, he is to forward it to the appropriate individual and/or up the chain of command until the request is answered. If the request form is directed to a particular officer, the officer receiving the request will forward the request to the officer to whom the request is directed. If the officer to whom the request

4

is directed is not on duty that day, the request will be addressed on that officer's next scheduled working day.

26.    I have never received any request form from the Plaintiff concerning any allegation made basis of his Complaint.

27.    Plaintiff has been residing in the general population of the jail and eating normally for over two months.

28.    Internal grievance procedures at the Lee County Detention Center are available to all inmates. It is the policy of the Lee County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon.

29.    All inmates are provided a copy of the Lee County Detention Center Inmate Handbook when they are booked into the jail. Plaintiff signed a receipt showing that he had received a copy of the handbook and could read it. The inmate handbook states that an inmate may report a grievance on an inmate request form. Grievances are first answered by the appropriate staff at the lowest level in the chain of command. The inmate handbook also states that if the inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the Sheriff, who will make the final decision.

30.    Per Lee County Sheriff's Office policy, an inmate has the opportunity to appeal any grievance to me if he were not satisfied with the response at the lower levels in the chain of command. The Plaintiff has not appealed any grievance to me. Accordingly, the Plaintiff has failed to exhaust his administrative remedies at the Lee County Detention Center.

31.    A copy of all grievances are filed in the inmate's file. However, the only grievance in the Plaintiff's inmate file concerns his complaint that he could not eat the jail food because of his religious beliefs. Had the Plaintiff made a request concerning any other

5

allegations of his Complaint a copy would have been placed in the Plaintiff's inmate file. However, no such requests can be found in the Plaintiff's inmate file.

32.    I have complied with all policies and procedures of the Lee County Detention Facility. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

33.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.


RAY ROBERSON

**SWORN TO** and **SUBSCRIBED** before me this $\underline{2\,0}$ day of February, 2007.


NOTARY PUBLIC
My Commission Expires:_____ MY COMMISSION EXPIRES FEB. 8, 2011

6

**Exhibit E
Affidavit of
Gwendolyn Crawl**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| AMIR ABDUL AL-HAKIM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:06-cv-01049-MEF-CSC |
| | ) | |
| LEE COUNTY JUSTICE CENTER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF GWENDOLYN CRAWL

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF LEE | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared GWENDOLYN CRAWL, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Gwendolyn Crawl. I am over the age of nineteen and competent to execute this affidavit. I have been employed with the Lee County Detention Facility for over fifteen-years as a Correctional Officer. For the past five years I have served as the corrections officer in charge of the kitchen. My duties include overseeing the kitchen trustee workers, the preparation of menus, overseeing the preparation of meals and serving of meals to the inmates, and making out supply orders.

2.      I am familiar with the Plaintiff, Amir Abdul Al-hakim, also known as Wayne Harris, due to his incarceration in the Lee County Detention Facility.

3.      I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

4.     Menus for the inmates at the Lee County Detention Facility are written out each month based on an original pre-approved menu. The original pre-approved menu has been approved by a certified dietician at the Auburn University Extension Office. This dietitian-approved menu is the basis for all meals that have been served to inmates in the Lee County Detention Facility over the past two years.

5.     Menus detailing what will be served for breakfast, lunch, and supper each day at the Lee County Detention Facility are written out each month by me based on this original pre-approved menu. Although I am not a certified dietitian, I ensure that the menus contain ample amounts of dairy products, proteins and vegetables. Water is served to the inmates daily; also, inmates receive non-fat milk and fruit drinks several times a week. Further, healthy portions are served at each meal. Inmates are served meat daily. Inmates usually are served three to four different food items at every meal, offering a variety of food choices each day. Inmates are served fruit several times a week.

6.     During Plaintiff's incarceration, he has been served a meal three times a day each and every day he has been incarcerated. Because Plaintiff refused to eat, he was placed in the E-1 medical cell for observation.

7.     Plaintiff has been residing in the general population of the jail and eating normally for over two months.

8.     Plaintiff has inconsistently stated what he will and will not eat due to his religious beliefs. Because Plaintiff indicated on his booking sheets that he did not eat pork or white bread due to his religious beliefs, I did not send these items on his tray. After Plaintiff stated that he would eat rice, wheat bread and water, I sent him these items at meal time.

2

After Plaintiff stated that he would eat peanut butter, I sent him a peanut butter sandwich. I have tried my best to accommodate Plaintiff's dietary requests.

9.      I have never received any request form from the Plaintiff concerning any of the allegations of his Complaint.

10.     I have complied with all policies and procedures of the Lee County Detention Facility. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

11.     I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

Gwendolyn Crawl

**SWORN TO** and **SUBSCRIBED** before me this 2 6 day of February, 2007.

NOTARY PUBLIC
My Commission Expires:____ MY COMMISSION EXPIRES FEB. 5, 2011

3

**Exhibit F**
**Affidavit of**
**Tommy Threat**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

AMIR ABDUL AL-HAKIM,        )
                           )
      Plaintiff,          )
                           )
v.                          )  Civil Action No.  3:06-cv-01049-MEF-CSC
                           )
LEE COUNTY JUSTICE CENTER, et al.)
                           )
      Defendants.        )

### <u>AFFIDAVIT OF TOMMY THREAT</u>

STATE OF ALABAMA      )
                        )
COUNTY OF LEE        )

      **BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Tommy Threat, who being known to me and being by me first duly sworn on oath deposes and says as follows:

      1.    My name is Tommy Threat. I am over the age of nineteen and competent to execute this affidavit.

      2.    I am employed by the Lee County Sheriff's Office and assigned to serve at the Lee County Detention Center. I have achieved the rank of Sergeant. I have been employed at the Lee County Detention Center for six (6) years. I am a graduate of the Alabama Jail Management School.

      3.    I am familiar with the Plaintiff, Amir Abdul Al-Hakim, also known as Wayne Harris, due to his incarceration in the Lee County Detention Facility.

      4.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

      5.    It is the policy of the Lee County Sheriff's Office to allow persons incarcerated in

the Lee County Detention Center the opportunity to worship in the recognized religion of their choice, receive religious counseling, and attend in-house religious programs.

6.    Religious professionals and religious volunteers who wish to provide scheduled religious programs must be cleared by the chief deputy sheriff before being admitted to the Detention Center.

7.    All religious visitors are subject to search and must comply with all visitor regulations.

8.    Religious volunteers who are approved may go into the dayroom and provide ministry in general population areas to those inmates who wish to participate.

9.    Religious volunteers may also make use of the multi-purpose area in order to hold religious services.

10.    Inmates in administrative segregation may receive ministry individually only.

11.    Religious services may be scheduled for a set time each week. Other services may be scheduled for other times with the chief deputy sheriff's approval. Normally, there are religious services held on Wednesdays and Sundays. Inmates have the opportunity to request an individual religious visit for any Wednesday by filling out a request form and turning it in to any officer.

12.    Plaintiff never asked me for an individual religious visit. If any request was made by the Plaintiff for an individual religious visit, that request would have been answered, and a copy of the answered request would have been placed in the Plaintiff's inmate file. However, upon review of the Plaintiff's inmate file, no such form is present.

13.    No inmate who, in the opinion of the sheriff, chief deputy sheriff, or shift supervisor, presents a security risk may attend religious services. Such inmates will be allowed free access to religious counseling or conferences on an individual basis.

2

14.     No member of the Detention Center staff may discriminate against any inmate on the basis on that inmate's choice of religion.

.15.     The Lee County Sheriff's Office will not provide any religious materials of any nature to inmates at Sheriff's Office's expense.

16.     Inmates receive ample amounts of dairy products, proteins and vegetables. Water is served to the inmates daily; also, inmates receive non-fat milk and fruit drinks several times a week. Further, healthy portions are served at each meal. Inmates are routinely served meat daily. Inmates usually are served three to four different food items at every meal, offering a variety of food choices each day. Inmates are served fruit several times a week.

17.     During Plaintiff's incarceration, he has been served a meal three times a day each and every day he has been incarcerated. Because Plaintiff refused to eat, he was placed in the E-1 medical cell for observation. A camera in cell E-1 allows the officer in central control to monitor that cell 24 hours a day. Through this camera, Plaintiff was observed by multiple officers eating potato chips, when he supposedly was refusing to eat. On November 17, 2006, Plaintiff was observed by several officers with an open bag of corn chips in his room. He was also observed hiding food between his bunk and the toilet. After several days in the medical cell, Plaintiff began accepting his trays and then asked that he be put back into the general population.

18.     Because Plaintiff refused his trays, officers began keeping a log of when trays were offered to Plaintiff and whether he refused or accepted them.

19.     While housed in this medical cell, Plaintiff was offered time in the exercise yard. He was offered 45 minutes to one hour every day, but he refused to go. He stated he was too weak from not eating.

20.     It is the policy of the Lee County Sheriff's Office that members of the Detention

3

Center staff receive and answer any written grievances or requests made by inmates to the sheriff, chief deputy sheriff, or Detention Center personnel.

21.    Inmates housed in the Lee County Detention Center are furnished with inmate request forms for the purpose of stating their requests or grievances in writing. Detention Center personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate. The officer receiving the request form is to answer the request if possible. If that officer is unable to answer the request, he is to forward it to the appropriate individual and/or up the chain of command until the request is answered. If the request form is directed to a particular officer, the officer receiving the request will forward the request to the officer to whom the request is directed. If the officer to whom the request is directed is not on duty that day, the request will be addressed on that officer's next scheduled working day.

22.    I have never received any request form from the Plaintiff concerning any allegation made basis of his Complaint.

23.    Plaintiff has been residing in the general population of the jail and eating normally for over two months.

24.    Internal grievance procedures at the Lee County Detention Center are available to all inmates. It is the policy of the Lee County Sheriff's Office that inmates are permitted to submit grievances and that each grievance will be acted upon.

25.    All inmates are provided a copy of the Lee County Detention Center Inmate Handbook when they are booked into the jail. Plaintiff signed a receipt showing that he had received a copy of the handbook and could read it. The inmate handbook states that an inmate may report a grievance on an inmate request form. Grievances are first answered by the appropriate staff at the lowest level in the chain of command. The inmate handbook also states that

4

if the inmate is not satisfied with the first answer to his grievance, the inmate may appeal all the way up the chain of command, up to the sheriff, who will make the final decision.

26.    A copy of all grievances are filed in the inmate's file.    However, the only grievance in the Plaintiff's inmate file concerns his complaint that he could not eat the jail food because of his religious beliefs.    Had the Plaintiff made a request concerning any other allegations of his Complaint a copy would have been placed in the Plaintiff's inmate file. However, no such requests can be found in the Plaintiff's inmate file.

27.    I have complied with all policies and procedures of the Lee County Detention Facility. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

28.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.


_____
TOMMY THREAT

**SWORN TO** and **SUBSCRIBED** before me this 2⅚ day of February, 2007.


_____
NOTARY PUBLIC
My Commission Expires:_____ MY COMMISSION EXPIRES FEB. 3, 2011

5

**Exhibit G**
**Affidavit of**
**Linda Stewart**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

AMIR ABDUL AL-HAKIM,        )
                               )
      Plaintiff,           )
                               )
v.                          )  Civil Action No.  3:06-cv-01049-MEF-CSC
                               )
LEE COUNTY JUSTICE CENTER, et al.)
                               )
      Defendants.           )

### AFFIDAVIT OF LINDA STEWART

STATE OF ALABAMA       )
                             )
COUNTY OF LEE          )

     **BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Linda Stewart, who being known to me and being by me first duly sworn on oath deposes and says as follows:

     1.     My name is Linda Stewart. I am over the age of nineteen and competent to execute this affidavit. I have been employed as a nurse with the Lee County Detention Facility for over five years. I am an L.P.N. and have been licensed for over twenty-years, having served as a nurse in the ICU and CCU in Cobb Hospital Emergency Room for fifteen-years. I taught Nursing Assistance Clinicals for two years at Career Institute. I collected medical information for the law firm of Bellamy and Jones for three years, and I was employed as the personal nurse for Doctor Hoffman, in Phenix City, Alabama, for twelve-years, prior to my coming to the Lee County Detention Facility.

     2.     I certify and state that the documents from Plaintiff's Medical File provided to the Court which are attached to the Defendants' Special Report are true and correct copies of

inmate records, kept at the Lee County Jail in the regular course of business. I am the Custodian of these Records.

3.      I am familiar with the Plaintiff, Amir Abdul Al-Hakim, also known as Wayne Harris, due to his incarceration in the Lee County Detention Facility.

4.      I have complied with all policies and procedures of the Lee County Detention Facility. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

5.      As a Detention Facility Nurse, I have neither duty nor authority with regard to any non-medical issues, such as food service, exercise time or religious activities that occur at the Detention Center. My sole duty and authority is with regard to medical care of inmates.

6.      It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Facility are entitled to a level of health care comparable to that available to citizens in the surrounding community which will ensure their physical and emotional well-being.

7.      Medical care rendered to inmates in the Lee County Detention Facility is delivered under the direction of a licensed health care provider.

8.      No health care personnel or Detention Facility officer or other employee of the Sheriff's Office will ever summarily or arbitrarily deny an inmate's reasonable request for medical services.

9.      Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively.

2

10. Inmates are guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.

11. It is the policy of the Lee County Sheriff's Office to allow inmates incarcerated in the Lee County Detention Facility to request health care services at any time.

12. Two methods may be utilized by inmates incarcerated in the Lee County Detention Facility in order to secure health care services:

> a. Verbal Request: An inmate may make a verbal request for emergency medical attention to any member of the Detention Center staff at any time.
>
> b. Written Request: An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Detention Center staff.

13. Requests for medical treatment will be accepted by members of the Detention Facility staff at any time.

14. When a request for medical treatment is made to a member of the Detention Facility staff, the staff member receiving the request will notify the shift supervisor of the inmate's request. It is the shift supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner. Any doubt as to whether an actual need exists for medical treatment will be resolved in favor of the inmate and medical treatment will be offered.

15. Medical requests of an emergency nature are to be handled immediately.

16. As a Lee County Sheriff's Office policy, during the booking process, inmates are informed of the methods by which they may obtain medical treatment.

17. The Detention Facility nurses, under the direction of the Detention Facility Administrator, are charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive medical treatment or for scheduling times when the treating physician may attend to health care needs at the Detention Facility.

18.     All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a Detention Facility official.   Should the physician request, a Detention Facility officer will be present for any and all examinations the treating physician deems appropriate.

19. .    Sick call is conducted on a scheduled basis by a licensed practical nurse and is available to all inmates.   All inmates are required to pay a $10.00 fee for non-emergency treatment and a $3.00 fee for prescription medication.  Inmates will not be denied medical treatment because of lack of funds or for any other reason.  When an inmate has insufficient funds in his/her trust account to pay for the assessed fee(s), a lien in the amount of the fee(s) will be placed on the inmate's trust account against future monies which may be received.

20.     On November 10, 2006, I examined Plaintiff due to his refusal to eat the meals served to him.  Plaintiff appeared alert and healthy, although he had bad body odor due to his refusal to shower.  Plaintiff showed no signs of dehydration.  I asked him why he was not eating and he stated that the "pudding" was "impure" and the "water has too many chemicals." He also stated that he only eats goat, lamb, and baked white fish and that he does not eat vegetables or white bread.  I offered him Ensure drink or milk to drink but he refused and stated those were both against his religion.  Plaintiff stated that he would drink water until he was served food he could eat.

21.     I started a log sheet for corrections officers to write at each meal whether Plaintiff refused or accepted his tray.  I sent a note to the kitchen staff alerting them to the fact that at booking, Plaintiff stated that due to his religion he does not eat pork or white bread.  I

4

made an appointment for Plaintiff to be examined by Dr. McFarland. I also spoke with Major Torbert regarding my examination of Plaintiff.

22.    I followed Dr. McFarland's orders with regard to the Plaintiff's medical care. In fact, per the policy of the Lee County Sheriff's Office, I always follow the instructions of Dr. McFarland on all medical issues.

23.    I have never received a grievance from the Plaintiff concerning the allegations made the basis of his Complaint.

24.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

_____
Linda Stewart

**SWORN TO** and **SUBSCRIBED** before me this 20 day of February, 2007.

_____
NOTARY PUBLIC
My Commission Expires: ___MY COMMISSION EXPIRES FEB. 5, 2011___

5

**Exhibit H**
**Affidavit of**
**John McFarland, M.D.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

AMIR ABDUL AL-HAKIM,      )
                   )
     Plaintiff,       )
                   )
v.                   )   Civil Action No. 3:06-cv-01049-MEF-CSC
                   )
LEE COUNTY JUSTICE CENTER, et al.)
                   )
     Defendants.     )

## AFFIDAVIT OF JOHN MCFARLAND

STATE OF ALABAMA     )
                   )
COUNTY OF LEE      )

BEFORE ME, the undersigned authority and Notary Public in and for said County and State at large, personally appeared John McFarland, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is John McFarland. I am over the age of nineteen and competent to execute this affidavit.

2.    I am a licensed physician serving as an emergency room doctor with East Alabama Medical Center. Also, since 1994, I have served as the treating physician for inmates at the Lee County Detention Facility.

3.    I am familiar with the Plaintiff, Amir Abdul Al-Hakim, also known as Wayne Harris, due to his incarceration in the Lee County Detention Facility.

4.    I examined Plaintiff on November 14, 2006 due to his refusal to eat or bathe while housed in a medical observation cell. I noted that Plaintiff was having difficulty adjusting to living at the Detention Center. Plaintiff stated to me that because of his Muslim religion he does not eat the food or water at the jail. However, on this date I noted that his

weight had increased four pounds since the date he was incarcerated in the Detention Center and had increased since he was weighed on November 11, 2006. I examined Plaintiff and noted that he had a normal, conformable gait and that his blood pressure was normal. I noted that Plaintiff had poor hygiene, a poor attitude and poor interactions. I instructed that his vital signs continue to be taken each day and that food and water be offered to him each day. I also instructed that I examine him again in a week.

5.    I again examined Plaintiff on November 21, 2006. Plaintiff appeared to be doing well and stated that he was currently eating but could not eat "most things" served at the jail. Plaintiff stated that he has told jail officers that he is not eating although he has been observed eating by officers. During Plaintiff's examination I observed food particles in his mouth. I instructed that staff continue to check Plaintiff's weight to ensure that it remained stable. I also determined that Plaintiff's request to return to the general population and get away from the 24 hour camera observation could be granted as long as Plaintiff continued to eat and his weight remained stable or increased.

6.    I followed up on Plaintiff's condition with an examination on November 27, 2006. On this date, Plaintiff stated that he has no problems and that he is "kind of liking it" in the jail. I observed that his weight had remained stable, that his gait was normal and that his abdomen was soft and not tender, I authorized his return to the general population.

7.    I have no duty or authority with regard to any conditions of the Detention Center, food service, exercise time or religious activities that occur at the Detention Center. My sole duty and authority is with regard to medical care of inmates.

8.    I have complied with all policies and procedures of the Lee County Detention Facility. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

2

9.    The Plaintiff has never filed a written grievance with me regarding the allegations made the basis of his Complaint.

10.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.


_____
JOHN MCFARLAND, M.D.

**SWORN TO** and **SUBSCRIBED** before me this 20 day of February, 2007


_____
NOTARY PUBLIC
My Commission Expires: MY COMMISSION EXPIRES FEB. 5, 2011

3

# Exhibit I
# Lee County Detention center menus for November 2006 through February 2007

## November - 2006

### Breakfast - Lunch - Dinner

**11/1/06 Wed.**
- Grits
- Toast
- Egg
- Jelly

Bologna Sand
Corn
Mash Potato
Fruit Cocktail

Pinto Beans
Rice
Okra-Corn-Tomato
Corn Bread
Bake Apples

**11/2/06 Thurs.**
- Grits
- Toast
- Sausage
- Egg
- Jelly

Fish Sand
Green Beans
Chips
Mash Potato
Cookie

~~Chili~~
Corn Bread
Green Beans
Pudding

**11/3/06 Fri.**
- Grits
- Toast
- Beef Hash
- Jelly

Ham & Cheese Sand
Peas & Carrots
Mash Potato
Pudding

Navy Beans
Corn Bread
Mix Greens
Slice Apples

**11/4/06 Sat.**
- Grits
- Toast
- Sausage
- Egg
- Jelly

Bologna Sand
Bake Beans
Green Beans
Cookie -

Black eyes
Corn Bread
Steam Squash
Rice
Bake Apples
Tomato Beaujo

**11/5/06 Sun.**
- Grits
- Toast
- Red Hot
- Egg
- Jelly

Ham Sand
Bake Beans
Mash Potato
Apple Sauce

Pepper Steak
Green Beans
Pudding / Corn Bread
Mash Potato / Fruit Drink

# November - 2006

## Breakfast - Lunch - Dinner

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 11/6/06 Mon. | Grits Toast Egg Jelly | Veg. Beef Soup Crackers mash Potato Apple Sauce | Pinto Beans Corn Bread Okra Corn Tomatoes Steam Squash Pudding |
| 11/7/06 Tues. | Grits Toast Sausage Egg Jelly | Bologia Sand Peas & Carrots Corn Cookie | Beef ov rons Blackeye Green Beans Corn Bread Sloce Apples |
| 11/8/06 Wed. | Grits Toast Beef Hash Jelly | Chili Dog French Fries Bake Beans Fruit Cocktail Pudding | Northern Beans Corn Bread Okra - Corn & Tomatoes Collard Greens Sloce Apples |
| 11/9/06 Thurs. | Grits Toast Egg Jelly | Ham & Cheese Sand Corn mash Potatoe Pudding | Blackeyes Corn Bread Rice Mex Greens Fruit Cocktail |
| 11/10/06 Fri. | Grits Toast Sausage Egg Jelly | Veg Soup Bologia Sand mash Potato Steam Butter Stk Peas & Carrots Apple Sauce | Pinto Beans Steam Squash mash Potato Corn Bread Pudding |

November - 2006

Breakfast - Lunch - Dinner

11/11/06 Grits          Ham Sand            Spaghetti
Sat. Toast              Bake Beans          Corn Bread
Beef Hash              mash Potato          Green Beans
Jelly                   Pudding             Slice Apples

                                            Bake Chicken
11/12/06 Grits         Bologna & Cheese Sand  Beef Fritters
Sun. Toast             Peas & Carrots      mash Potato
Red Hot                Corn                Green Beans
Egg                    Apple Sauce         Pudding
Jelly                                      Corn Bread

11/13/06 Grits         Veg. Beef Soup      Black eyes
Mon. Toast             Peanut Butter Jelly Sand  Corn Bread
Egg                    mash Potato         Collard Greens
Jelly                  Slice Apples        Rice
                                           Bake Apples -

11/14/06 Grits         Chili Dog           Beef - O - Rows
Tues. Toast            French Fries        Corn Bread
Sausage                Bake Beans          Green Beans
Egg                    Pudding -           Fruit Cocktail
Jelly

11/15/06 Grits         Ham Sand            Ponto Beans
Wed. Toast             Green Beans         Rice
Beef Hash              mash Potatoes       Okra - Corn - Tomato

## November - 2006

### Breakfast - Lunch - Dinner

**11/16/06 Thurs.**
Grits
Toast
Sausage
Eggs
Jelly

Corn Dog
Bake Beans
Mash Potato
Slice Apple

Lomas Beans
Steam Squash
Corn Bread
Rice
Bake Apples

**11/17/06 Fri.**
Grits
Toast
Eggs
Jelly

Ham Sand
Mash Potato
Green Beans
Pudding -

Spaghetti
Corn Bread
Green Beans
Cake - Fruit Drink

**11/18/06 Sat.**
Grits
Toast
Red Hot
Eggs
Jelly

Bologna Sand w/cheese
Mash Potato
Bake Beans
Cookie -

Navy Beans
Corn Bread
Mix Greens
Slice Apples
Rice

**11/19/06 Sun.**
Grits
Toast
Sausage
Eggs
Jelly

Ham Sand
Peas & Carrots
Corn
Apple Sauce -

Pepper Steak
Mash Potato
Green Beans
Roll
Pudding -

**11/20/06 Mon.**
Grits
Toast
Eggs

Bologna Sand
Corn
Green Beans

Black Eye
Mash Potatoes
Corn Bread

# November - 2006

## Breakfast - Lunch - Dinner

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 11/21/06 Tues. | Grits / Toast / Beef Hash / Jelly | Veg. Beef Soup / Peanut / Jelly Sand. / Mash Potatoe / AppleSauce | Pinto Beans / Rice / Mix Greens / Corn Bread / Bake Apple - |
| 11/22/06 Wed. | Grits / Toast / Sausage / Egg / Jelly | Chili Dog / French Fries / Bake Beans / Pudding - | Spaghetti / Corn Bread / Green Beans / Mix Fruit |
| 11/23/06 Thurs. | Grits / Toast / Red Hot / Egg / Jelly | Corn Dog (VOID) Thanks Giving Dinner / Bake Beans / Mash Potatoe / Green Beans | Peas & Carrots / Corn / Sandwich / Pudding |
| 11/24/06 Fri. | Grits / Toast / Egg / Jelly | Ham & Cheese Sand / Corn / Peas & Carrots / Slice Apples - | Blackeyes / Corn Bread / Mash Potatoe / Collard Greens / Cake |
| 11/25/06 Sat. | Grits / Toast | Bolognia Sand / Bake Beans | Limas Beans / Corn Bread |

November - 2006

Breakfast - Lunch - Dinner

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 11/26/06 Sun. | Grits Toast Red Hot Eggs Jelly | Ham Sand Bake Beans Mash Potatoe Cookie - | Pepper Steak - Green Beans Mash Potatoe Pudding / Roll Fruit Drink |
| 11/27/06 Mon. | Grits Toast Eggs Jelly | Bolongia Green Beans Mash Potatoe Pudding | Beef O- Roni Corn Bread Mex Beans Apple Sauce |
| 11/28/06 Tues. | Grits Toast Sausage Eggs Jelly | Veg. Beef Soup Peanut Butter Jelly / Sand Mash Potatoe Pineapples | Bwt. o Beans Rice Corn Bread Steam Squash Pudding |
| 11/29/06 Wed. | Grits Toast Beef Hash Jelly | Chili Dog Mash Potatoe Bake Beans Cookie - | Limas / Beans Corn Bread Rice Cohard Green Pineapples - |
| 11/30/06 Thurs. | Grits Toast | Bolongia Sand Corn | Blackeges Corn Bread |

## December - 2006

## Breakfast - Lunch - Dinner

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 12/1/06 FRI. | Grits<br>Fri. Toast<br>Egg<br>Jelly | Fish Sand<br>Bake Beans<br>Mash Potato<br>Pudding | Spaghetti<br>Corn Bread<br>Green Beans<br>Apple Rings |
| 12/2/06 SAT. | Beef Hash<br>Grits<br>Toast<br>Jelly | Bologna Sand<br>Peas & Carrots<br>Corn<br>Pineapples | Pinto Beans<br>Rice<br>Mix Greens / Corn Bread<br>Slice Apples |
| 12/3/06 SUN. | Grits<br>Toast<br>Sausage<br>Egg | Ham Sand<br>Mash Potato<br>Bake Beans<br>AppleSauce | Beef Fritters<br>Mash Potato<br>Green Beans<br>Pudding / Corn Bread<br>Fruit Drink |
| 2/4/06 MON. | Grits<br>Toast<br>Egg<br>Jelly | Veg. Beef Soup<br>Peanut / Butter Jelly Sand<br>Mash Potato<br>Cookie - | Limas Beans<br>Corn Bread<br>Collard Greens<br>Rice / Mix Fruit |
| 12/5/06 Tues. | Grits<br>Toast | Chili Dog<br>Bake Beans | Black eyes -<br>Corn Bread |

December - 2006

Breakfast - Lunch - Dinner

| 12/6/06 Wed. | Grits<br>Toast<br>Egg<br>Jelly | Ham & Cheese Sand<br>Corn<br>Peas & Carrots<br>Pine Apples — | Limas Beans<br>Corn Bread / Rice<br>Pine Apple - |
|---|---|---|---|
| 12/7/06 Thurs. | Grits<br>Toast<br>Sausage<br>Egg | Veg. Beef Soup<br>Cracker / Mash Potato<br>Cookie / Butter Jelly / Peanut | Pinto Beans<br>Corn / Bread / Rice<br>M&C Greens / Sliced Apple |
| 12/8/06 Fri. | Grits<br>Toast<br>Beef Hash<br>Jelly | Fish Sand<br>Mash Potato<br>Bake Beans<br>Apple Sauce | Beef - O. Row.<br>Corn Bread<br>Green Beans<br>M&C Fruit - / Fruit Drink |
| 12/9/06 Sat. | Grits<br>Toast<br>Sausage<br>Egg | Bolong'a Sand<br>Green Beans<br>Slice Apples<br>Mash Potato | Navy Beans<br>M&C Greens<br>Corn Bread / Rice<br>Pine Apple |
| 12/10/06 Sun. | Grits<br>Toast | Ham Sand<br>Apple Kings | Pepper Steak<br>Green Beans<br>Mash Potato |

# December - 2006

## Breakfast - Lunch - Dinner

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 12/11/06 Mon. | Grits, Toast, Egg, Jelly | Veg. Beef Soup, Crackers, Mash Potatoe, Pudding | Black eyes, Corn Bread, Rice/Collard Greens, Apple Sauce |
| 12/12/06 Tues. | Grits, Toast, Sausage, Egg, Jelly | Ham Sand, Corn, Slice Apple, Bake beans | Spachetti, Corn Bread, Bake Apples, Mix Greens/Fruit Drink |
| 12/13/06 Wed. | Grits, Toast, Beef Hash, Jelly | Chili Dog, Bake Beans, Peas & Carrots, Apple Sauce | Pinto Beans, Corn Bread, Steam Squash, Pudding/Rice |
| 12/14/06 Thurs. | Grits, Toast, Sausage, Egg, Jelly | Bologna Sand, Green Beans, Mash Potato, Cookie | Lima Beans, Corn Bread, Okra, Corn + Tomatoes, Rice/Mix Greens |
| 12/15/06 Fri. | Grits, Toast | Fish Sand, Mash Potato, Bake Beans | Beef-O-Roni, Green Beans, Corn Bread |

# December - 2006

## Breakfast - Lunch - Dinner

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 12/16/06 Sat. | Grits Toast Sausage Egg Jelly | Bologna Sand Mash Potatoe Bake Beans Apple Sauce | Black eyes Corn Bread Rice Collard Greens Slice Apples |
| 12/17/06 Sun. | Grits Toast Red Hot Egg Jelly | Ham Sand Corn Mash Potatoe Mix Fruit | Bake Chicken Green Beans Mash Potatoe Corn Bread Pudding |
| 12/18/06 Mon. | Grits Toast Egg Jelly | Bologna Sand Mash Potatoe Peas & Carrots Pudding | Fruit Drink: Pinto/Beans Corn Bread Mix Greens / Rice Bake Apples |
| 12/19/06 Tues. | Grits Toast Beef Hash Jelly | Veg. Beef Soup Crackers / Mash Potatoe Slice Apples | Navy Beans Corn Bread Collard Greens Rice / Slice Apples |
| 12/20/06 Wed. | Grits Toast | Chili Dog Bake Beans | Spaghetti Corn Bread |

December - 2006

BreakFast - Lunch - Dinner

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 12/21/06 Thurs. | Grits Toast Egg Jelly | Ham Sand Slice Apples Bake Beans Corn | Pinto Beans Corn Bread Rice Steam Squash Slice Apples |
| 12/22/06 Fri. | Grits Toast Beef Hash Jelly | Chicken Sand Green Beans Mash Potato Pudding / Fruit Drink | Black eyes Corn Bread Rice / Mix Greens Mix Fruit |
| 12/23/06 Sat. | Grits Toast Egg Jelly | Bologna Sand Peas & Carrots Mash Potato Cookie - | Beef-O-Ron! Corn Bread Green Beans Pudding / Fruit Drink |
| 12/24/06 Sun. | Grits Toast Sausage Egg Jelly | Ham Sand Bake Beans Mash Potato Slice Apples | Chicken Patties Green Beans Mash Potato Corn Bread / Pudding Fruit Drink |
| 12/25/06 Mon. | Grits Toast | Bologna Sand Corn | |

# December - 2006

## Breakfast - Lunch - Dinner

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 12/26/06 Tues. | Grits Toast Egg Jelly | Veg. Beef Soup Peanut Butter/Jelly Sand Mash Potato Mix Fruit - | Black eyes Corn Bread Rice Collard Greens Slice Apples |
| 12/27/06 Wed. | Grits Toast Beef Hash Jelly | Ham & Cheese Sand Corn Green Beans Pudding | Spaghetti Corn Bread Mix Greens Bake Apples /Fruit Drink |
| 12/28/06 Thurs. | Grits Toast Sausage Egg | Chili Dog Mash Potato Bake Beans Cookie | Limas Beans Corn Bread Rice Steam Squash Pudding |
| 12/29/06 Fri. | Grits Toast Egg Jelly | Bologna Sand Peas & Carrots Mash Potato Slice Apples | Pinto Beans Rice Corn Bread Mix Greens Cake |
| 12/30/06 Fri. | Grits Toast | Ham Sand Bake Beans | Beef-O-Roni Corn Bread |

# December 2006

## BREAKFAST — LUNCH — DINNER

12/31/06
SUN.

**Breakfast:**
GRiTS
TOAST
Beef Hash -
Jelly -

**Lunch:**
Bolongia Sand
Corn
Mash Potato
Slice Apples

"The END"

**Dinner:**
Chicken Pattie
Mash Potato
Green Beans
Corn Bread
Pudding
FRuit Drink

JANUARY - 2007

BREAKFAST - LUNCH - DINNER

1/1/07 GRITS
MON. TOAST
SAUSAGE
EGGS
Jelly

Ham & Cheese Sand
Green Beans
Mash Potato
Cookie

Black eyes
Corn Bread
Collard Greens
Rice / Pudding /

1/2/07 GRITS
TUES. TOAST
EGGS
Jelly

Veg. Beef Soup
Peanut Butter Jelly Sand
Mash Potato
Slice Apple

Limas Beans
Corn Bread
Rice
Mix Greens
Cake

1/3/07 GRITS
WED. TOAST
SAUSAGE
EGGS

Corn Dog
Bake Beans
Mash Potato
Pudding

Spaghetti
Corn Bread
Green Beans
Cake / Fruit Drink

1/4/07 GRITS
THURS. TOAST
Beef Hash
Jelly

Bologna Sand
Corn
Bake Beans
Mix Fruit

Pinto Beans
Corn Bread
Steam Squash
Rice
Slice Apple -

1/5/07 GRITS
FRI. TOAST
Sausage

Ham Sand
Peas & Carrots
Mash Potato

Navy Beans
Corn Bread
Mix Greens

JANUARY – 2007

BREAKFAST – LUNCH – DINNER

| | BREAKFAST | LUNCH | DINNER |
|---|---|---|---|
| 1/6/07 SAT. | GRITS<br>TOAST<br>Egg<br>Jelly | Bolognia Sand<br>Bake Beans<br>Mash Potatoe<br>Slice Apples | Beef-O-Roni<br>Corn Bread<br>Mix Greens<br>Pudding |
| 1/7/07 SUN. | GRITS<br>TOAST<br>Sausage<br>Egg<br>Jelly | Ham Sand<br>Corn<br>Mash Potatoe<br>Cookie | Pepper Steak<br>Green Beans<br>Mash Potatoe<br>Corn Bread<br>Pudding / Fruit Drink |
| 1/8/07 MON. | GRITS<br>TOAST<br>Egg<br>Jelly | Veg. Beef Soup / Jelly<br>Peanut Butter Sand<br>Mash Potatoe<br>Pudding | Black eyes<br>Corn Bread<br>Rice<br>Collard Greens<br>Mix Fruit |
| 1/9/07 TUES. | GRITS<br>TOAST<br>Beef Hash<br>Jelly | Chili Dog / Chili Dog<br>Bake Beans<br>Chips<br>Mix Fruit | Spaghetti<br>Corn Bread<br>Green Beans<br>Steam Squash<br>Apple |
| 1/10/07 WED. | GRITS<br>TOAST<br>Sausage | Ham & Cheese Sand<br>Green Beans<br>Mash Potatoe | Pinto Beans<br>Rice<br>Steam Squash |

# January - 2007

## Breakfast - Lunch - Dinner

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 1/11/07 Thurs. | Grits, Toast, Egg, Jelly | Bolongia Sand, Corn, Mash Potato, Cookie | Limas Beans, Rice, Okra, Corn, Tomatoes, Corn Bread, Slice Apples |
| 1/12/07 Fri. | Grits, Toast, Sausage, Egg, Jelly | Chicken Sand, Mash Potato, Green Beans, Pudding | Veg. Beef Soup, Corn Bread, Mash Potato, Apple Sauce |
| 1/13/07 Sat. | Grits, Toast, Beef Hash, Jelly | Corn Dog, Bake Beans, Chips, Slice Apples | Pinto Beans, Corn Bread, Rice, Steam Squash, Mix Fruit |
| 1/14/07 Sun. | Grits, Toast, Sausage, Egg, Jelly | Ham Sand, Mash Potato, Peas & Carrots, Mix Fruit | Chicken Patties, Green Beans, Mash Potato, Corn Bread, Pudding / Fruit Drink |
| 1/15/07 Mon. | Grits, Toast | Bolongia Sand, Green Beans | Beef-O-Roni, Corn Bread |

JANUARY - 2007

Breakfast - Lunch - Dinner

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 1/16/07 Tues. | Grits, Toast, Beef Hash, Jelly | Chili Dog, mash Potatoe, Bake Beans, Apple Sauce | Veg. Beef Soup, Corn Bread, mash Potatoe, Pudding |
| 1/17/07 Wed. | Grits, Toast, Sausage, Egg, Jelly | Ham & Cheese Sand, Corn, Peas & Carrots, Slice Apples | Spaghetti, Corn Bread, Mix Greens, Cake |
| 1/18/07 Thurs. | Grits, Toast, Egg, Jelly | Bologna Sand, Green Beans, mash Potatoe, Mix Fruit | Black eyes, Corn Bread, Collard Greens, Rice, Slice Apples |
| 1/19/07 Fri. | Grits, Toast, Sausage, Egg, Jelly | Chicken Sand, mash Potatoe, Green Beans, Pudding | Lima Beans, Corn Bread, Rice, Steam Squash, Apple Sauce |
| 1/20/07 Sat. | Grits, Toast | Ham Sand, Corn | Beef-O-Roni, Corn Bread |

# JANUARY - 2007

## BREAKFAST - LUNCH - DINNER

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 1/21/07 SUN. | Grits Toast Sausage Egg Jelly | Bologna Sand Bake Beans Mash Potatoe Slice Apples | Pinto Beans Okra-Corn-tomatoes Corn Bread Mix Fruit Rice |
| 1/22/07 MON. | Grits Toast Egg Jelly | Veg. Beef Soup Peanut/Butter Sand Jelly Mash Potatoe Apple Sauce | Black eyes Corn Beans Rice Collard Greens Mix Fruit |
| 1/23/07 TUES. | Grits Toast Beef Hash Jelly | Ham & Cheese Sand Corn Bake Beans Cookie - | Spaghetti Corn Bread Green Beans Pudding - Corn |
| 1/24/07 WED. | Grits Toast Sausage Egg Jelly | Bologna Sand Peas & Carrots Mash Potata Pudding - | Lima Beans Rice Okra Corn tomatoes Corn Bread Mix Greens Slice Apples |
| 1/25/07 THURS. | Grits Toast | Fish Sand Bake Beans | Navy Beans Rice |

# January - 2007

## Breakfast - Lunch - Dinner

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 1/26/07 Fri. | Grits, Toast, Egg, Jelly | Corn Dog, Bake Beans, Mash Potatoe, Pudding | Beef-O-Roni, Corn Bread, Green Beans, Mix Fruit |
| 1/27/07 Sat. | Grits, Toast, Beef Hash, Jelly | Bologna Sand, Green Beans, Mash Potato, Slice Apple | Black-eyes, Corn Bread, Rice, Mix Greens, Pudding |
| 1/28/07 Sun. | Grits, Toast, Sausage, Egg, Jelly | Ham Sand, Corn, Bake Beans, Cookie | Pepper Steak, Green Beans, Mash Potato, Corn Bread, Pudding, Fruit Drink |
| 1/29/07 Mon. | Grits, Toast, Egg, Jelly | Bologna Sand, Peas & Carrots, Mash Potato, Apple Sauce | Spaghetti, Corn Bread, Green Beans, Slice Apples |
| 1/30/07 Tues. | Grits, Toast | Veg. Beef Soup, Peanut Butter Sand | Pinto Beans, Corn Bread |

JANUARY - 2007

Breakfast - Lunch - Dinner

| Breakfast | Lunch | Dinner |
|---|---|---|
| 1/31/07 Grits | Bolongix Sand | Limas Beans |
| Wed. Toast | Corn | Rice |
| Beef Hash | Bake Beans | Mix Greens |
| Jelly | Cookie | Corn Bread |
| | | Pudding - |
| | "THE END" | |

# FEBRUARY - 2007

## BREAKFAST - LUNCH - DINNER

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 2/1/07 Thurs | GRITS<br>TOAST<br>SAUSAGE<br>EGGS<br>JELLY | Chili Dog ②<br>Bake Beans<br>Chips<br>Pudding | Spaghetti<br>Corn Bread<br>Steam Squash<br>Slice Apples<br>Mix Greens |
| 2/2/07 FRI. | GRITS<br>TOAST<br>EGGS<br>Jelly | Ham & Cheese Sand<br>Green Beans<br>Mash Potatoe<br>Apple Sauce | Pinto Beans<br>Corn Bread<br>Rice<br>Okra-Corn-Tomato<br>Pudding |
| 2/3/07 SAT. | GRITS<br>TOAST<br>Beef Hash<br>Jelly | Bolongia Sand<br>Peas & Carrots<br>Mash Potatoe<br>Slice Apples | Black eyes<br>Corn Bread<br>Rice<br>Collard Greens<br>Cake |
| 2/4/07 SUN. | GRITS<br>TOAST<br>Red Hot<br>Eggs<br>Jelly | Ham Sand<br>Corn<br>Mash Potatoe<br>Cookie - | Chicken Pattie<br>Corn Bread<br>Green Beans<br>Mash Potatoe<br>Pudding |
| 2/5/07 MON. | GRITS<br>TOAST<br>Eggs<br>Jelly | Veg. Beef Soup<br>Peanut/Butter Jelly<br>Mash Potatoe<br>Mix Fruit | Limas Beans<br>Rice<br>Corn Bread<br>Mix Greens<br>Apple Sauce |

FEBRUARY - 2007

BREAKFAST - LUNCH - DINNER

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 2/6/07 Tues. | Grits, Toast, Sausage, Eggs, Jelly | Corn Dog, Bake Beans, Mash Potatoe, Cookie | Beef-O-Roni, Steam Squash, Corn Breads, Pudding / Fruit, Drink |
| 2/7/07 Wed. | Grits, Toast, Beef Hash, Jelly | Sloppa Joe, Mash Potatop, Corn, Apple Sauce | Beef Steak + Gravy, Corn Breads, Rice, Mix Greens, Slice Apples |
| 2/8/07 Thurs. | Grits, Toast, Sausage, Eggs, Jelly | order Hot - Chili Dogs (2), Green Beans, Pinto Beans, Pudding - | Cajun Beans, Rice, Corn Breads, Collard Greens, Cake |
| 2/9/07 Fri. | Grits, Toast, Eggs, Jelly | Bolognia Sand, Bake Beans, Green Beans, Apple Sauce | Black eyes, Corn Breads, Rice, Okra-Corn-Tomatoes, Pudding |
| 2/10/07 Sat. | Grits, Toast, Red Hot, Eggs, Jelly | Ham & Cheese Sand, Mash Potatop, Peas & Carruts, Cookie | Spaghetti, Green Beans, Corn Breads, Slice Apples |

FeBRUARY 2007

BreakFast    -    LuncH    -    Dinner

| | | |
|---|---|---|
| 2/11/07 GRiTS<br>Sun. ToAst<br>SAusAge<br>Eggs<br>Jelly | Ham SAnd<br>Corn<br>mash PoTAToe<br>Mix FRuiT | pepper STeAk<br>Green BeAns<br>mash PoTAToe<br>Corn BReAd<br>Pudding |
| 2/12/07 GRiTS<br>Mon. ToAst<br>Eggs<br>Jelly | Bolongia SAnd<br>BAke BeAns<br>Peas & CArrots<br>Apple SAuce | PinTo BeAns<br>STeam Squash<br>Corn BReAd<br>Rice<br>Pudding |
| 2/13/07 GRiTS<br>Tues. ToAst<br>SAusAge<br>Eggs<br>Jelly | Veg. Beef Soup<br>PeAnuT / BuTTer<br>Jelly SAnd<br>mAsh PoTAToe<br>Slice Apples | SpAghetti<br>Roll<br>Green BeAns<br>Apple SAuce / FRui BReAd |
| '07 GRiTs<br>ToAsT<br>Eggs<br>Jelly | Ham SAnd<br>Corn<br>mash PoTAToe<br>Cookie | Blackeyes<br>Corn BReAd<br>Okra-Corn-TomAToes<br>CollArd Greens<br>Slice Apples |
| Ts<br>T<br>'T | Chiclew SAnd<br>Green BeAns<br>mAsh PoTAToe<br>Pudding - | Limas BeAns<br>Corn BReAd<br>Rice<br>Mix Greens<br>Mix FRuiT |

FEBRUARY - 2007

Breakfast - Lunch - Dinner

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 2/16/07 FRI. | Grits Toast Beef Hash Jelly | Bologna Sand Bake Beans Peas & Carrots Apple Sauce | Spaghetti Corn Bread Green Beans Cake / Fruit Drink |
| 2/17/07 SAT. | Grits Toast Sausage Egg Jelly | Corn Dog Bake Beans mash Potatoe Pudding - | Black eyes Corn Bread Rice Mix Greens Slice Apples |
| 2/18/07 SUN. | Grits Toast Red Hot Jelly Egg | Ham Sand Corn Bake Beans Cookie | pepper Steak mash Potatoe Green Beans Corn Bread Pudding / Fruit Drink - |
| 2/19/07 MON. | Grits Toast Egg Jelly | Veg. Beef Soup Peanut Butter & Jelly Sand mash Potatoe Apple Sauce | Lima Beans Steam Squash Corn Bread Rice / Cake |
| 2/20/07 TUES. | Grits Toast Sausage Egg Jelly | Bologna Sand Bake Beans Green Peas Cookie - | Beef-O-Roni Corn Bread - Green Beans - Pudding - |

# February - 2007

## Breakfast - Lunch - Dinner

| Breakfast | Lunch | Dinner |
|---|---|---|
| 2/21/07 Grits Wed. Toast Beef Hash Jelly | Chili Dog Chips Bake Beans - Pudding | Pinto Beans Steam Squash Corn Bread Rice Slice Apples - |
| 2/22/07 Grits Thurs. Toast Sausage Egg Jelly | Ham & Cheese Sand Corn Peas & Carrots Apple Sauce - | Spaghetti Corn Bread Mix Greens Cake |
| 2/23/07 Grits Fri. Toast Red Hot Egg Jelly | Bologna Sand Mash Potato Bake Beans Mix Fruit | Black eyes Corn Bread Collard Greens Rice Pudding - |
| 2/24/07 Grits Sat. Toast Egg Jelly | Bologna & Cheese Sand Corn Bake Beans Cookie | Limas Beans Okra - Corn & Tomatoes Corn Bread Steam Squash Cake - |
| 2/25/07 Grits Sun. Toast Sausage Egg - Jelly - | Ham Sand Bake Beans Corn Slice Apples - | Pepper Steak Mash Potato Green Beans Pudding Kool / Fruit Drink |

# FEBRUARY - 2007

## BREAKFAST - LUNCH - DINNER

| | Breakfast | Lunch | Dinner |
|---|---|---|---|
| 2/26/07 Mon. | Grits Toast Eggs Jelly | Bologna Sand Bake Beans mash Potato Apple Sauce | Spaghetti Corn Bread Green Beans Slice Apples / Fruit Drink |
| 2/27/07 Tues. | Grits Toast Beef Hash Jelly | Veg. Beef Soup Peanut /Butter /Jelly Sand mash Potato Mix Fruit | Limas Beans Rice Corn Bread Mix Greens Pudding |
| 2/28/07 Wed. | Grits Toast Sausage Eggs Jelly | Ham & Cheese Sand Corn Peas & Carrots Pudding - | Pinto Beans Corn Bread Rice Collard Greens Apple Sauce |

"THE END"

**Exhibit J**
**Affidavit of**
**Kelley Hendricks Griffith**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

AMIR ABDUL AL-HAKIM,                )
                                     )
    Plaintiff,              )
                                     )
v.                                   )  Civil Action No. 3:06-cv-01049-MEF-CSC
                                     )
LEE COUNTY JUSTICE CENTER, et al.)
                                     )
    Defendants.             )

### AFFIDAVIT OF KELLEY HENDRICKS GRIFFITH

STATE OF ALABAMA          )
                          )
COUNTY OF LEE             )

    **BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared Kelley Hendricks Griffith who being known to me and being by me first duly sworn on oath deposes and says as follows:

    1.    My name is Kelley Hendricks Griffith. I am over the age of nineteen and competent to execute this affidavit. I am a Licensed Practical Nurse (LPN). I have been employed by the Lee County Sheriff's Office and assigned to the Lee County Detention Facility since February 2006. Prior to my employment at the Sheriff's Office, I was employed as an LPN at Mt. Meigs DL/S Juvenile Detention Facility for six months. I earned my LPN degree from Southern Union in August 1998. Since earning this degree, in addition to my experience in jail/prison settings, I have been employed by Lanier Health Services Hospital where I was assigned to the Medical/Surgical Floor. I also served as an LPN in the Army Outpatient Medical Clinic for two years. I worked for three years at the Lake Martin Community Hospital in the emergency room, medical/surgical floor, and outpatient floor. I

have also been employed to manage the office of Robert Bartel, MD, and I have worked at the Tallassee Community Hospital.

2.     I am familiar with the Plaintiff, Amir Abdul Al-Hakim, also known as Wayne Harris, due to his incarceration in the Lee County Detention Facility.

3.     I have complied with all policies and procedures of the Lee County Detention Facility. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

4.     As a Detention Facility Nurse, I have neither duty nor authority with regard to any non-medical issues, such as food service, exercise time or religious activities that occur at the Detention Center. My sole duty and authority is with regard to medical care of inmates.

5.     I examined Plaintiff on November 11, 2006 due to his refusal to eat breakfast or lunch on this date. Corrections officers informed me that Plaintiff was drinking fluids. I spoke with Officer Crawl about Plaintiff's meals. She stated to me that she was trying to send food to accommodate his religious beliefs by sending wheat bread and rice to him. I asked her to continue to do so.

6.     I examined Plaintiff again in the evening of November 11, 2006 due to his complaints of his stomach hurting and that standing made him dizzy. I observed that he was calm and steady in his movements and that his gait was steady. Plaintiff's vital signs were stable. Plaintiff told me that he was not eating because he only eats organic peanut butter, pita bread, lamb, and fish that have not been fried. Plaintiff stated that he was not eating wheat bread because he does not like wheat bread. Plaintiff stated that he was not drinking the water that come out of the kitchen faucet or the faucet in his cell because these faucets have bacteria on them. He stated that he only drinks purified water. I instructed that Plaintiff be moved to a

2

medical observation cell so that he could be observed 24 hours a day. I spoke with Major Torbert about my examination of Plaintiff. We discussed continuing to send Plaintiff food, Plaintiff's refusal to shower and placing Plaintiff in a medical observation cell. I also contacted Dr. McFarland regarding Plaintiff.

7.    On November 17, 2006 I, along with several Corrections Officers, observed Plaintiff in cell E-1, where he was placed for medical observation, eating what appeared to be potato chips and dip. Plaintiff was observed through the camera in his cell.

8.    I followed Dr. McFarland's orders with regard to the Plaintiff's medical care. In fact, per the policy of the Lee County Sheriff's Office, I always follow the instructions of Dr. McFarland on all medical issues.

9.    I have never received a grievance from the Plaintiff concerning the allegations made the basis of his Complaint.

10.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

_____
KELLEY HENDRICKS GRIFFITH

**SWORN TO** and **SUBSCRIBED** before me this 20 day of February, 2007.

_____
NOTARY PUBLIC
My Commission Expires:    MY COMMISSION EXPIRES FEB. 5, 2011

3

# Exhibit K
# Plaintiff's Medical File

INMATE NAME _Al-Hakim Amir Abdul_ SS# ▓▓▓▓▓▓▓▓

| DATE OF TEST | TIME OF ▓▓▓ | ▓▓▓▓ ▓▓▓▓ | OFFICER SIGN | INMATE SIGN | ▓▓▓▓ |
|---|---|---|---|---|---|
| 11/10/06 | 1600 | refused | Nurse Stevens | | 107 |
| 11/11/06 | 04:30 | refused | Wright | | |
| 11/11/2006 | 1115 | refused | Phillips | | |
| 11/11/2006 | 1615 | REFUSED | PHILLIPS | | 110 |
| 11/12/2006 | 0400 | Refused | Webb | | |
| 11/12/2006 | 1045 | REFUSED | AARON | | |
| 11/12/2006 | 1600 | REFUSED | AARON | | |
| 11/13/06 | 04:30 | Refused | Brown (33) | | |
| 11-13-06 | 11:30 A | REFUSED | TABB | | |
| 11-14-06 | 04:00 Am | Refused | Parquette | | |
| 11-14-06 | 11:00 AM | Refused | Sellers | | |
| 11/14/06 | 12:35 | Refused | Scroggins | | |
| 11/14/06 | | | | | |
| 11/15/06 | | | | | |
| 11/15/06 | 1130 | Refused | Scroggins | | |
| 11/15/06 | 16:23 | Refused | Scroggins | | |
| 11/16/06 | 1100 | REFUSED | PHILLIPS | | |
| 11/16/06 | 1600 | REFUSED | PHILLIPS | | |
| 11/17/06 | 0400 | Refused | Sims | | |
| 11/17/06 | 11:12 | Eating Food | Calley's | | |
| 11-18-06 | 0420 | Accept Tray | Torbert | | |
| 11-18-06 | 11:15 | EATING | JUKES | | |
| 11-18-06 | 4:10 Pm | EATING | JUKES | | |
| 11-20-06 | 4:30 Am | Eating | Tucker | | |
| 11-20-2006 | 11:00 | | AARON | | |
| 11-20-2006 | 110:00 | accepted | AARON | | |
| 11-20-2006 | | | | | |
| 11-21-2006 | 11:00 | ACCEPTED | COWHICK | | |
| 11-21-2006 | 16:00 | ACCEPTED | COWHICK | | |
| 11-22-2006 | 04:30 | accepted | Webb | | |
| 11-22-06 | 11:35 | accepted | Pantelis | | |
| 11-23-06 | 11:30 | ACCEPTED | Jukes | | |

INMATE BLOOD SUGAR LOG

INMATE NAME _AL-HAKEM, AMIR ABDUL_ SS# _____

| DATE OF TEST | TIME OF ~~TEST~~ TRAY | ~~TEST~~ TRAY READING | OFFICER SIGN | INMATE SIGN | UNIT |
|---|---|---|---|---|---|
| 11/24/2006 | 11:00 | ACCEPT | AARON | | |
| 11/24/2006 | 16:00 | ACCEPT | AARON | | |
| 11-25-06 | 11:00 | ACCEPT | Scroggins | | |
| 11-25-06 | 16:00 | ACCEPT | Scroggins | | |
| 11-26-06 | 11:00 | ACCEPT | PHILLIPS | | |
| 11-26-06 | 16:00 | | PHILLIPS | | |
| 11-27-06 | 04:00 | ACCEPT | WEBB | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## NOTES

NAME: At-Hakim Amir Abdul    SS# ████████████

DOB: _____ AGE: 35 SEX: M RACE: B

DRUG ALLERGIES: None _____ TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _____

_____

_____

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

### HEALTH CARE DOCUMENTATION

115+
Prior Sick

SUBJECTIVE:

OBJECTIVE:    BP_____ P_____ R_____ T_____ O2_____

ASSESSMENT:

**11/27/06    Lee County Detention Center    Al-Hakim-Amir-Abdul    #422945868**
This 35 YOBM is here for a follow up. He has no problems. In fact, he is kind of liking it the
way it is. He anticipates going to court next week and being released.
**Physical Exam:** He has a normal comfortable gait. His weight is stable. ABDOMEN: Soft and
nontender.
**Impression:**
**Plan:** It is okay for him to go to general population. Recheck prn.

PLAN:

REFER TO:_____ PA/PHYSICIAN_____ MENTAL HEALTH_____ DENTAL_____

SIGNATURE_____ TITLE MD DATE 11/27/06 TIME 1229

JOHN H MCFARLAND MD
AM8104894
AI 11404

# NOTES

NAME *Al-Hakim Amir Abdul* SS# ▓▓▓▓▓▓▓▓

DOB: ▓▓▓▓▓▓  AGE: 35  SEX: M  RACE B

DRUG ALLERGIES: ∅  TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _____

_____

_____

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT:

**11/21/06    Lee County Detention Center    Al-Hakim-Amir-Abdul    #422945868**
This 35 YOBM looks like he is doing well. He says he is eating but he still can't most things and in fact has told people he is not eating. He has been observed to eat. He complains of his time in the shower.
**Physical Exam:** He looks well. His mucous membranes are moist. In fact, he has some food particles in his mouth. HEART: Regular. LUNGS: Clear.
**Impression:** Food complaints.
**Plan:** We will make sure his weight is continuing to remain stable on the same scales (there has been a discrepancy). As long as he is eating and gaining or remaining stable with his weight for a week I imagine he would do fine in general population as he wants to be away from the observation camera. Recheck by me as needed.

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____ TITLE MD DATE 11/21/06 TIME 0909

JOHN H MCFARLAND MD
AM8104894
AL 11404

# NOTES

NAME _Al-Hakim, Amir Abdal_  SS# ▬▬▬▬▬▬▬

DOB: ▬▬▬▬  AGE: _35_  SEX: _M_  RACE _B_

DRUG ALLERGIES: _none_ _____  TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _I/m refusing meals._

_____

_____

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT: _I/m on a camera in E-1. I/m observed by several officers + myself eating something in his cell. I/m still refusing all his provided meals. Appeared to be eating something that looks like chips + dip. Noted this activity on camera + observed in Central Control._

PLAN: _Con't to observe_

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____  TITLE _LPN_  DATE _11/17/06_  TIME _11:10 AM_

1

# NOTES

NAME *Al-Hakim-Amir-Abdul* SS# ███████████

DOB: ████████  AGE: *35*  SEX: *M*  RACE *B*

DRUG ALLERGIES: *Ø*_____ TETNUS: _____

NATURE OF PROBLEM OR REQUEST: *Not eating Bathing in medical Observation " Reglyon "Moslims" J-3 Non-Compliant*

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

---

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP *108/62*  P *140*  R _____ T _____ O2 _____

*111*

*BS 56*

ASSESSMENT:

---

**11/14/06    Lee County Detention Center    ▲-Hakim-Amir-Abdul    #422945868**

This 35 YOBM has had some problems adjusting to the jail routines. He says that because he is Muslim he doesn't drink the water or eat the food. He supposedly has been refusing his trays. His weight is going up.

**Physical Exam:** He appears to have a normal comfortable gait. He has an increased heart rate but normal blood pressure. His blood sugar is satisfactory at 56. His weight at 111 is a pound more than it was a few days ago and 4 pounds more than it was when he came to the jail. His heart rate is fast, it is cold in the room and he has a pretty angry affect. HEART: Regular otherwise. LUNGS: Clear.

**Impression:** Character logic disorder with poor hygiene and poor attitude and interactions; tachycardia may be secondary to dehydration.

**Plan:** We will take his vital signs each day and continue to offer him food and water and make sure he is not losing weight. If his heart rate continues to be fast we will try to get a resting heart rate. Recheck by me in one week if he is still here.

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____ TITLE *MD* DATE *11-14-06* TIME *0922*

JOHN H MCFARLAND MD
AM8104894
AL 11404

1

# NOTES

NAME Al-Hakim, Amir Abdul    SS# ████████████

DOB: ████████    AGE: 35    SEX: M    RACE B

DRUG ALLERGIES: None    TETNUS: _____

NATURE OF PROBLEM OR REQUEST: C/o Stomach hurting
dizziness. Still refusing to eat. or
drink; standing etc makes him dizzy.

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

wt 110# today

## HEALTH CARE DOCUMENTATION

SUBJECTIVE: A+O x3; very calm; steady; gait steady

OBJECTIVE: BP 120/86  P 130  R 16  T 99.2  02 94%

ASSESSMENT: States that he's not eating or drinking. States
he only eats organic peanut butter + doesn't like wheat
bread. Only eats pita bread, Lamb, fish (not fried).
States the water from the kitchen + his cell comes out
of the faucet + has bacteria in it. States he only
drinks purified water. VS basically stable. Move to EI
to a cell w/ a camera (in day room now) + lock
him in. I/m refuses to shower - states he's too weak.

PLAN: Spoke c̄ Major Talbert, I/m must shower,
keep sending him the food. Explained how I/m talking/acting.
Call placed to Dr. McFarland in ER - move to observation.

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____ TITLE LPN DATE 5pm TIME 11/4/80

# NOTES

NAME _Al-Hakim, Amir Abdul_ SS# ████████████

DOB: ████████    AGE: _35_    SEX: _M_    RACE _B_

DRUG ALLERGIES: _Ø_____ TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _Still refusing to_

_eat_ _____

_____

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT: refused B'fast + lunch today.
Spoke c̄ Officer Crawl in kitchen - she states
she has been sending wheat bread, rice
etc trying to observe his religious bel
beliefs. writer explained to cont to do so
+ if he doesn't eat, he'll be ok. No s/s of
of dehydration as of yesterday. He'll be ok.

PLAN: cont to monitor whether he eats or
not. I/m is drinking. per officers.

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____ TITLE _LPN_ DATE _11/11/06_ TIME _1130A_

1

## NOTES

NAME *Al-Hakim Amir Abbal* SS# ███████████

DOB: ████████   AGE: 35   SEX: M   RACE: B

DRUG ALLERGIES: Ø _____ TETNUS: _____

NATURE OF PROBLEM OR REQUEST: Not eaten in 8 days
per J-3 States he, "Moslems"
no pork or White Bread.

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:                                    Wt 107

OBJECTIVE: BP 120/60  P 155  R 20  T 99.3  O2 98 %

ASSESSMENT: during TB Skin test ✓   BS 81

Called for J-3 Al-Hakim. J-3's in Cell Said
he, unable to get out & off bunk "Man not eating" 6th
when called for J-3 again - officer Phillip J-3 said
not able. asked officer Phillip bring J-3 to medical
in W/C on arrival to Clinic J-3 alert to PPT
asked why not eating. Because "pudding impure" "water
has too much Chemical" il only eat Cow Lamb & Bake
White Fish No Vegetable. No White Bread. asked J-3
if he would drink insure or milk "no" why "against my
religion" il have fasted x 3-4 days no Bath x 7-8 days
mm pink Skin Turgor good Capillary refill good & rapid
abd soft _____ good Bowel Sounds Ø swelling noted in Legs
Yest Called Placed Dr. McFarland above info given. Now
to medical Call, food observation, info emg. Terbut about T/m
about tube feeding. trange to day ✓ mental status talk. is
Judge about order to feed drink plenty of water Call of

REFER TO: (PA/PHYSICIAN)  (MENTAL HEALTH)  DENTAL____

SIGNATURE _____ TITLE LPN DATE 11/10/06 TIME 1800
any changes, talked to Maj. Terbut Maj. Talkp =
J-3. J-3 said he will drink H₂O till food ____ he
eat come in. Unform Mr. Cason over Mental Health Via
Via male assume not mental Status . .

# NOTES

NAME *Al-Hakim Amir* *Abdul* SS# �C

DOB: �C AGE: 35 SEX: M RACE: B

DRUG ALLERGIES: _____ TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _____

_____

_____

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

## HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT: J-3 *has no vomiting, Diarrhea Inform Kitchen of J-3 condition. J-3 has a bad body odor from not bathing C/o unable to stand. J-3 will be able to sit in shower in E-11*

*Log started. You refusal or accept trys. Wt daily. See am MD Tue. ✓ Urine nurse gd. Log in Control Dr*

PLAN: *Free of surgery Hx given I/m Myorys Because pt's not shown her doc*

REFER TO: _____ (PA/PHYSICIAN)   (MENTAL HEALTH)   DENTAL _____

SIGNATURE *Stewart* TITLE *Lpn* DATE 11/10/2 TIME 15:30

*Note: J-3 Walked to Clinic 2 days ago for PPD it's ∅ ∆.*

# INMATE REQUEST SLIP

Name Al-Hakim Amin Abdul                 Date 11/10/06

LOCATION E-1

- [ ] Telephone Call
- [ ] Special Visit
- [ ] Doctor
- [ ] Personal Problem
- [ ] Dentist
- [ ] Other
- [ ] Time Sheet

Briefly Outline Your Request. Give To Jailer

You already have Booking
Sheet that States I-3
Moslem no pork or
White Bread.

Michael
Mussa Steward

Do Not Write Below This Line - For Reply Only

Approved _____ Denied _____ Collect Call_____

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To Those The Request is Directed.

- [ ] Lieutenant
- [ ] Chief Deputy
- [ ] Sheriff

Date _____ Time Received _____

CORRECTION OFFICER _____

FORM: LCS-038 (6/99)

AKA: Wayne Harris **NOTES**

NAME _Al-Hakim Amir Abdus_ SS# ████████

DOB: ████████ AGE: _35_ SEX: _M_ RACE _B_

DRUG ALLERGIES: _none_ TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _I/m c/o taking_
_PPD. States he had a physical_
_a few wks ago in Atlanta_

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

### HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE: BP _____ P _____ R _____ T _____ O2 _____

ASSESSMENT: _I/m states that we (staff) are_
_predujuduced agaist him by making him_
_have a PPD. Explained to I/m per myself/other_
_nurse, c/o's (numerous staff members) etc. that_
_everyone has to have one. I/m denies ever having_
_a (+) reaction but very upset. States its not against_
_his religion but he doesn't want one._

PLAN: _Writer explained that we don't care if he doesn't_
_want one, it's required. he either has one like_
_everybody else in this jail or go into isolation._

REFER TO: ___ PA/PHYSICIAN ___ MENTAL HEALTH ___ DENTAL ___

SIGNATURE _Clifton_ TITLE _LPN_ DATE _____ TIME _____

_I/m took PPD to (L) FA s̄ Cliff._
_Clifton_
[1]

**ALABAMA DEPARTMENT OF PUBLIC HEALTH**
**MANTOUX TUBERCULIN SKIN TEST REPORT**                    F-6

t Nar Al-Hakim, Amir Abdul
        AKA: Harris, Wayne                    County: Lee
                                              Social Security No: _____
ss: _ [redacted]                             Phone No: _____
                                              Birth Date: _____
)M    [redacted]        B/M                  PI □ O   Month   Day   Year
  His_____                                 fy

n Tested:
lth Care Worker        □ Student              □ Homeless
lical Risk             □ Occupational         ☑ Jail/Prison
lter                   □ Foreign Born         □ Not at Risk

t: □ Yes   □ No        | Facility Name   LCSO

actor Category (Check One)  A □   B ☑  C □   (See Reverse Side)

Tested: 11 8 00    Date Read: 4/10/06        Result  0    mm
      Month  Day  Year        Month  Day  Year
wo-Step Method Only)
nd Test Date: _____    Date Read: _____    Result: _____ mm
      Month  Day  Year        Month  Day  Year
      All results must be recorded in millimeters (mm) of induration.

s: W-White; B-Black; AI-American Indian; A-Asian; AN-Alaskan Native;
  H/PI-Hawaiian/Pacific Islander; O-Other                    ADPH-TB-26/Rev. 2-06 (BS)

ALABAMA DEPARTMENT OF PUBLIC HEALTH
BUREAU OF CLINICAL LABORATORIES

| HIV SEROLOGY | 86701 |
| WESTERN BLOT | 86689 |

I.D. NUMBER

**917557**

*PLEASE USE A BLACK PEN*

Patient's Last Name | Patient's First Name | MI

Address
Al-Hakim, Amir Abdul
AKA: Harris, Wayne                              Apt.

City                          GLE   State   Zip

B/M

Phone

**Counselor (Initials)**

**Date Collected** 11 / 15 / 2006

**EIA**
Results: Indicated by Marked
- ● Negative
- ○ Not Done
- ○ Positive

**WESTERN BLOT**
- ○ Negative
- ○ Indeterminate
- ○ Positive
- ○ Not Done

| RACE | | | | | | SEX | | DOB (mmddyyyy) |
|---|---|---|---|---|---|---|---|---|
| W | B | H | A | I | U | M | F | |
| ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | / / |

**ANALYST INITIALS**

**DATE REPORTED** 11 / 20 / 2006

Provider   LEE COUNTY DETENTION CENTER
Address    P.O. BOX 2407
City       OPELIKA, AL 36803      State       Zip

SITE CODE | CNTY

- ☐ Birmingham
- ☐ Decatur
- ☐ Dothan
- ☐ Mobile
- ☑ Montgomery

County Health Dept. CHR Number | Social Security Number

Medicaid Number | Provider Number

**Has Patient Had a Previous Positive or Indeterminate Western Blot?**
- ● No   ○ Yes   ○ Unknown

Date ___ / ___ / _____

**PATIENT SHOULD HAVE A
TUBERCULIN SKIN TEST
IF HIV POSITIVE**

1997321024

*REPORT COPY*
*Return to provider*

ADPH-CL-109 / REV 01-01

ALABAMA DEPARTMENT OF PUBLIC HEALTH
BUREAU OF CLINICAL LABORATORIES

HIV SEROLOGY     86701
WESTERN BLOT     86689

I.D. NUMBER  **917557**

*PLEASE USE A BLACK PEN*

Patient's Last Name | Patient's First Name | MI

Address
Al-Hakim, Amir Abdul
AKA: Harris, Wayne

City
_____
B/M

Apt.

GLE   State   Zip

Phone

Counselor (Initials)

Date Collected  1 / 1 / 5 / 2 0 0 6

**EIA**
Results: Indicated by Marked
- ○ Negative
- ○ Not Done
- ○ Positive

**WESTERN BLOT**
- ○ Negative
- ○ Indeterminate
- ○ Positive
- ○ Not Done

| RACE | | | | | | SEX | | DOB (mmddyyyy) |
|---|---|---|---|---|---|---|---|---|
| W | B | H | A | I | U | M | F | |
| ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | / / |

**ANALYST INITIALS**

**DATE REPORTED**   / /

- ☐ Birmingham       ☐ Mobile
- ☐ Decatur          ☐ Montgomery
- ☐ Dothan

Provider  LEE COUNTY DETENTION CENTER
Address   P.O. BOX 2407
City      OPELIKA, AL 36803   State   Zip

SITE CODE   CNTY

County Health Dept. CHR Number

Social Security Number

Has Patient Had a Previous Positive or Indeterminate Western Blot?
○ No   ○ Yes   ○ Unknown

Medicaid Number

Provider  Number

Date   / /

| Patient History Since 1978 of: | No | Yes |
|---|---|---|
| Donated Blood, Plasma or Sperm | ● | ○ |
| Received Blood Transfusion/Products | ● | ○ |
| Occupational Exposure To Body Fluids | ● | ○ |
| Hemophilia | ● | ○ |
| Possible Perinatal Transmission | ● | ○ |
| History of Sexually Transmitted Disease | ● | ○ |
| Non-IV drug use (including alcohol) | ● | ○ |
| IV drug use | ● | ○ |
| Multiple Sex Partners | ● | ○ |
| Exchanged sex for money or drugs | ● | ○ |
| Victim of physical abuse or sexual assault | ● | ○ |

**Medicaid Information**

Patient Tested:  ● Yes  ○ No  ○ Unk

Pre-test Counseling:  ● Yes  ○ No  ○ Unk
Reason:

Re-test :  ○ Yes  ○ No  ○ Unk
Reason:

Post-test Counseling:  ● Yes  ○ No  ○ Unk   1 1 / 2 4 / 2 0 0 6
Reason:

**SEXUAL ORIENTATION**
○ Homosexual   ● Heterosexual   ○ Bisexual

| Sexual Exposure Since 1978 to a: | No | Yes |
|---|---|---|
| Hemophiliac | ● | ○ |
| IV Drug User | ● | ○ |
| Person With Known HIV Infection/AIDS | ● | ○ |
| Man Who Has Sex With Men | ● | ○ |
| Male Prostitute | ● | ○ |
| Female Prostitute | ● | ○ |

**Referral**

TB Skin Test:  ○ Yes  ○ No  ○ Unk
Reason:

Medical/Social Services:  ○ Yes  ○ No  ○ Unk
Reason:

Partner Notification:  ○ Yes  ○ No  ○ Unk
Reason:

Currently Pregnant:  ○ Yes  ○ No    If Yes, Due Date   - -

Pregnant During Previous 5 Years:  ○ Yes  ○ No    If Yes, Date of Last Delivery   - -

I have been informed about the HIV antibody test, the meaning of the possible results, the possible consequences of those results and that the information provided on this form is confidential. Having been so informed, I hereby voluntarily consent to be counseled and, or, tested for the HIV-ab. *Please see back of form.

Signature _____  Witness _____  Date  11/11/06

6143316947

*PROVIDER COPY*
*Retain for your records*

ADPH-CL-109 / REV 01-01

# Bureau of Clinical Laboratories- Montgomery

PO BOX 244018, MONTGOMERY AL 36124-4018
Phone:(334) 260-3400  FAX:(334) 274-9800

Page:  1

Patient:

| Provider: | Accession | 4045495 | ID: | 1075888 | Al-Hakim,Amir,Abdul |
|---|---|---|---|---|---|
| TKD JUSTICE CENTER | Requisition #: | 4045495 | | | D.O.B.: |
| PO BOX 2407 | Service Area: | | Collected: | 11/15/2006 @ | Sex:  M    MALE |
| OPELIKA, AL, 36801-0000 | CHR #: | | Received: | 11/17/2006 @ 10:07 AM | Phone:  (000) 000-0000 |
| (000) 000-0000, | | | Reported: | 11/20/2006 @  3:25 PM | SSN: |
| UNKNOWN DOCTOR | | | | | Status:  Final Report |

| Test Name | Result | Units | Normal Range | Notes |
|---|---|---|---|---|

### Serology Results

| | | |
|---|---|---|
| VDRL, STS Qualitative | Non-Reactive | |

Lab Director
William J. Callan,Ph.D.